# Pennypacker's Appeal.

1. Executions were in the hands of the sheriff, and the defendants' personal estate levied on; counter claims were made by the administrator of Watson, and to avoid the sale the defendants paid the money to the sheriff giving him notice not to pay it over; the money was called into court by the plaintiffs. A rule was taken on the administrator to show cause why the plaintiffs should not take the money. The law of interpleader was applicable, the court was legally in possession of the fund and bound to decide its ownership.

2. The administrator appeared to the rule, put in an answer and the matter was referred to an auditor, before whom the administrator appeared at several meetings. On the last, he declined to appear, alleging that the court had no jurisdiction. The auditor awarded the money to the plaintiffs in the execution. The report was confirmed, and the administrator decreed to pay the costs on the ground that his prosecution of the claim was without the care and inquiry which ordinary prudence would have suggested. The Supreme Court affirmed the decree.

January 20th 1868. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. STRONG, J., at Nisi-Prius. READ, J., absent.

Appeal from the decree of the Court of Common Pleas of *Chester county.*

On the 31st of October 1865, Isaac B. Worth and Thomas G. Pennypacker presented their petition to the Court of Common Pleas of Chester county, setting forth that Isaac B. Worth, on the 26th of March 1861, borrowed $2000 from Jonathan Gause, for which a bond was given, and judgment was entered on it on the same day:

That on the 1st of April 1864, Thomas G. Pennypacker borrowed $2000 from Gause, on which judgment was entered on the 29th of the same month. That on the 19th of December in the same year, both judgments were marked to the use of Anne Watson, and on the 17th of September 1865, to the use of Henry Buckwalter: That about the 6th of October 1865, the petitioners severally received notice from U. V. Pennypacker, administrator, &c., of John F. Watson, deceased, that he claimed the moneys due on said judgments as part of the estate of his intes-

tate, that he had brought suit against Gause to recover these moneys, and notified the petitioners not to pay the moneys to Gause or his assigns, until it should be judicially determined whether they belonged to the estate of Watson : That on the 20th of October, Buckwalter issued executions against the petitioners, and in order to prevent the sale of their personal property, Worth paid to the sheriff $2101.10, and T. G. Pennypacker paid to the sheriff $2089.44, the amounts of the executions against them respectively, and at the same time notified the sheriff not to pay the same to the plaintiff, and that a rule would be taken on him to pay the moneys into court ; that the sheriff had paid the moneys into court, and they prayed " the court to cause notice to be given to the said Henry Buckwalter, and to the said U. V. Pennypacker, administrator to the estate of John F. Watson, deceased, to come into court and make their respective claims to the said moneys, or to take such other action as to the court shall seem meet, in order that the rights of the claimants as aforesaid to said moneys may be judicially determined."

On the same day Buckwalter, the plaintiff in the executions, took a rule on U. V. Pennypacker, administrator, &c., to show cause why the money in court should not be paid to Buckwalter.

On the 3d of November 1865, Pennypacker filed an answer to the rule, setting out that John F. Watson, the decedent, in 1856 and 1860, placed in Gause's hands about $30,000 for the use of his three children who were then placed in Gause's care, one of them being Anne Watson, to whose use the judgments had been marked ; that in 1860 Watson contracted a debt of about $12,000 to certain merchants in Pittsburg, and died on the 23d of May 1864 ; that Gause assigned to Anne Watson without any pecuniary consideration, bonds and mortgages, including those of Worth and T. G. Pennypacker, amounting to about $13,500 ; that on the 19th of August 1865, the respondent, by direction of the Pittsburg creditors, took out administration on the estate of John F. Watson, deceased ; that afterwards Anne Watson, at the instance of Gause and others, executed a power of attorney, authorizing the transfer of the above-mentioned judgments, and they were accordingly transferred to Buckwalter, on the 11th of September 1865 ;—setting forth also other facts not important to the question. He averred that he expected to prove, amongst other things, that Buckwalter was not an innocent holder, but that he knew that the money had been placed in the hands of Gause by Watson, that administration had been taken out on Watson's estate, that suit had been brought by the administrator against Gause for the money placed in his hands, and that the two judgments were part of the same money. After a reply by Buckwalter, U. V. Pennypacker filed a demurrer (so called), viz. : " The plaintiff joins issue on the matters alleged in the answer."

[Pennypacker's Appeal.]

The court, on the 15th of November 1865, appointed Joseph Hemphill, Esq., auditor to distribute the money in court.

The auditor reported that he sat on nine different days, the first having been the 4th of December 1865, and the last the 20th of January 1866, at all of which the parties were present in person or by attorney; it having been understood at the meeting preceding the 20th of January, that the case should be concluded on that day.  The auditor further reported,

" On that day the counsel of the parties appeared before the auditor when the counsel of Mr. Pennypacker declined taking further part in the case, withdrew therefrom, and filed a paper with the auditor, the material part of which reads as follows :

" ' The said Uriah V. Pennypacker, administrator to the estate of John F. Watson, deceased, in his own proper person, comes and says that the auditor ought not to have, or take further cognisance of the proceeding aforesaid, and he respectfully declines to appear further before said auditor, either in person or by his attorney, because he says that the said court had no jurisdiction in the premises to compel him to appear in said court, by rule, and become a party to said proceedings.'

" Upon the filing of said paper with the auditor, no further evidence being offered on either side, and no argument of the case proposed, the auditor was required by the counsel for the plaintiff in the executions, to make his report, which he now makes— leaving, for the present, the question of jurisdiction, to be noticed hereafter."

He then reported the facts as found by him; awarded the fund to Buckwalter, and directed the costs, amounting to $113.60, to be paid by U. V. Pennypacker, administrator, &c., of John F. Watson, deceased.  He further reported :

" The notice of the administrator to the obligors not to pay the money until after judicial determination, made it proper, if not the duty of the court, to rule him into court, that he might take care of his interests.  Coming into court and making claim to the money, going before the auditor and persisting in that claim until the last meeting, when it was evident he had failed in his proof, and that the auditor must report adversely to his claim, can he avoid the consequences of his voluntary acts by denying the jurisdiction of the court at this stage of the proceedings ?  The auditor thinks not."

The auditor gave notice of the completion of his report to Buckwalter's counsel who waived exceptions, and to the counsel of U. V. Pennypacker, who, as the auditor reported, " declined having further connection with the case, having heretofore withdrawn therefrom, under direction of his client."

On the 23d of February 1866, U. V. Pennypacker filed a plea to the jurisdiction of the court, and the same day the report of

the auditor was filed and confirmed, and U. V. Pennypacker ordered to pay the costs of the audit to Joseph Hemphill, Esq., the auditor.

On the 12th of March 1866, a rule was granted on U. V. Pennypacker to show cause why an attachment should not issue against him for the non-payment of the costs.

In answer to the rule, Mr. Pennypacker filed an affidavit, "that no estate has come into his hands as administrator of John F. Watson, deceased, and he has no property or money in possession belonging to said deceased, and is therefore unable to pay the costs of audit."

He also presented a petition, setting forth that the decree directing him to pay the costs was made without his knowledge, and praying the court to stay the decree, and permit him to file exceptions to the report, or take such other action as the court may direct.

On the 21st of May 1866, the rule was made absolute.

Butler, P. J., saying in concluding his opinion:—"Nor can we relieve him from the decree on the ground that he has received no property belonging to Watson's estate. The rule that an administrator is not generally liable to his antagonist for costs, where he has received no estate with which to pay, is well understood; but I do not think it applicable here. First, because this is not *costs due his antagonist,* but compensation to an officer of the court, for services rendered in determining a question which he presented, and asked to have determined. And second, because we think the facts show that the claim was set up and the proceeding entered into, at the instance of certain creditors of Watson (as whose agent or attorney the administrator appears to have assumed his office), without that care and inquiry which ordinary prudence would have suggested, and a proper regard for the rights of others would have required. The officer of the court must be paid either by the administrator or the plaintiff in the execution. To require the latter, who so far as appears is nowise in fault—against whose right to the money no single fact has been proven, to bear this expense, would, as it seems to us, be palpably unjust."

U. V. Pennypacker appealed to the Supreme Court, and assigned for error the decree directing him to pay the costs.

*W. B. Waddell* for appellant, cited Allegheny Bank's Appeal, 12 Wright 328; Black's Executor *v.* Black's Executor, 10 Casey 354; Callender *v.* Keystone Life Insurance Co., 11 Harris 471.

*W. McVeagh* for appellee: Musser *v.* Good, 11 S. & R. 247.

The opinion of the court was delivered, January 30th 1868, by

[Pennypacker's Appeal.]

AGNEW, J.—The objection to the jurisdiction of the court in these cases was unfounded. Executions were in the hands of the sheriff who levied upon the personal estate of the defendants. They to avoid a sale paid the money to the sheriff, at the same time giving him notice not to pay it over to the plaintiff in the executions on account of the counter claims of U. V. Pennypacker, administrator of John F. Watson, deceased, who had notified them that the debt secured by the judgments belonged to Watson's estate and not to plaintiff, and not to pay over the money until the right to it should be judicially ascertained. The money thus being in the hands of the sheriff was paid into court upon the motion of the attorney of the plaintiff in the executions; and on the same day on motion of the plaintiff's attorney, a rule was granted upon Pennypacker, the claimant, to show cause why the money should not be taken out of court by the plaintiff. Thus the court was legally in possession of the fund, and was compelled to decide the ownership of it. Pennypacker had laid formal claim to it, while the plaintiff had issued execution for it. The defendants could do nothing but pay the execution, and notify the sheriff of Pennypacker's claim, and he could do no less than pay the money into the hands of the court to protect himself. It was precisely the case, therefore, where the law of interpleader applies both voluntarily and compulsorily. Having possession of the fund, it was the duty of the court to determine the ownership at the instance of either party. Pennypacker had the right to come in and interplead voluntarily *pro interesso suo*, or the plaintiff in the writs had a right to compel him to interplead in order that the controversy should be settled. Without a particular discussion of the cases the following authorities are fully up to the point and show not only the existence of the practice of interpleader in Pennsylvania, in the common-law courts, but that it applies to just such a case as this: Heller *v.* Jones, 4 Binn. 61; Coates *v.* Roberts, 4 Rawle 100; Wallace *v.* Clingen, 9 Barr 46, 52; Brownfield *v.* Canon, 1 Casey 301.

The appellant relies on the case of the Allegheny Bank's Appeal, 12 Wright 328. But it affords no countenance to the doctrine it is cited to support. There a sheriff who at the time of his death had writs of execution in his hands upon which he had sold real estate, kept an account with the bank in his official character for deposits of money. His successor in office having made returns to the outstanding executions in the hands of the late sheriff of the sales of property and money made; the court, in order to get possession of the proceeds of sale supposed to be embraced in the sheriff's bank account, ruled the Allegheny Bank to bring the money into court. It was held that there was no relation between the bank and the court which made it liable to summary process as in the case of a sheriff, attorney or other

officer liable to rule and attachment. The bank was simply debtor to the sheriff, and liable to him only in a contract relation for repayment of the money, and this could only be, upon demand and refusal and by suit in which the bank could make any defence which might exist. Therefore it was held that the rule on the bank was null and void for want of jurisdiction. The next question in this case is as to the liability of Pennypacker personally for costs. After the rule was taken upon him to show cause against the plaintiff's right to take the money out of court he appeared; and by consent, instead of an issue, the case was referred to an auditor before whom he also appeared. The auditor held meetings upon nine several days, and it would seem without much having been done by Pennypacker to show his right to the money; for on the last day of the meeting he filed a paper with the auditor, declining to appear before him on the ground that the court had no jurisdiction, and stating that the auditor ought to take no further cognisance of the case. The auditor, however, reported finding that the plaintiff was entitled to the fund. This report was confirmed, and the court ordered Pennypacker to pay the auditor's and prothonotary's fees amounting to $113.60, on the ground that his prosecution of the claim was without the care and inquiry which ordinary prudence would have suggested, and a proper regard for the rights of others would have required. The facts upon which this conclusion of the court was founded are not before us, but we must presume were such as to justify it. This being the case, it is brought directly within the exception to the general rule stated in Collender's Administrator v. Keystone Insurance Co., 11 Harris 472, and decided in Show v. Conway, 7 Barr 136, which makes an administrator liable personally for costs incurred in setting up an unfounded and vexatious claim. The case in 11 Harris merely decides that the effect of a judgment in an action against an administrator is to throw the costs upon the estate only and not upon the administrator himself. But Show v. Conway decides that the court by special rule may make an administrator liable personally for costs where his proceeding has been vexatious and contrary to right, and the former case expressly admits this exception. We see no error, therefore, in the order of the court, and it is accordingly affirmed.