## I. P. BECHTEL v. P. W. SHEAFER.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued April 22, 1887—Decided January 3, 1888.

1. Though, as a general rule, a defendant seeking relief by an interpleader, must not have incurred any independent liability to either rival claimant, yet the mere fact that a contract relation existed with the plaintiff, will not necessarily deprive the defendant of the right to such relief.
2. Where the defendant is a mere stakeholder, with no rights of his own to be litigated, and the suit is to recover money claimed by rivals as between whom the defendant has no interest, it is not error upon his petition to call in the claimant not on the record and to award an issue to determine the right to the fund.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 451 January Term 1887, Sup. Ct.; court below, No. 214 March Term 1884, C. P.

On February 15, 1884, an action in assumpsit, with narr. in the common counts, was brought by Isaac C. Bechtel, for the use of Horatio Jones, trustee of Marion Jones, against Peter

W. Sheafer.    An affidavit of claim filed set forth the following note :

Due Pottsville, Pa., May 9, 1883, to Isaac P. Bechtel, sixty-eight hundred and twenty-one .92 dollars in full for an undivided one fourth in the Martin Horn tract.    Payable after May, 1883.

Signed,          P. W. SHEAFER.

Credits upon the said note were admitted, reducing the amount due thereon to $2,000.

On July 14, 1884, the defendant filed a petition, which as amended on July 16, represented : That he was indebted to Isaac P. Bechtel in the sum of $2,000, which sum was the balance due between them for the purchase of a certain interest in the Martin Horn tract of land ; that before said balance was paid to Bechtel or was demanded by him, Zacharia Batdorf notified the petitioner that under an agreement in writing between him and Bechtel, the said balance was due to and demandable by him and not the said Bechtel, and that petitioner had been threatened, and expected that suit would be brought against himself by said Batdorf : that the petitioner had no interest in the subject-matter of the suit already brought, and disclaimed all interest therein, as stated, and desired the suggestion to be filed of record ; that he was not informed which of the two claims to said money was valid, or whether it should be paid to said Bechtel, to use, etc., or to said Batdorf ; but, averring that he had been for a long time and was then ready to pay, offered to bring the money into court or to pay the same to the party entitled thereto, and prayed the order of the court directing the said Bechtel to interplead with said Batdorf to determine the right to said money.    A rule granted upon this petition, was made absolute on July 21, 1884, and said Bechtel, to use, etc., and said Batdorf were directed to interplead as prayed for.[1]

On May 22, 1885, a plea having previously been filed, the case was called for trial but was continued, no issue having been framed.    On June 22, 1885, a rule was granted on motion of plaintiff's attorneys to show cause why the petition filed by the defendant should not be disallowed and judgment entered in favor of plaintiff for want of an affidavit of defence.    On argument of this rule, on August 10, 1885, the court, CYRUS L. PERSHING, P. J., filed the following opinion :

Opinion of Court below.

This case resembles Brownfield v. Canon, 25 Pa. 299, in this respect, that it presents two parties, claiming by different assignments who demand the same money from Mr. Sheafer. The object of an interpleader is to determine to which of several claimants another party who disclaims all interest shall pay a certain debt or duty about which there is no dispute, except as to the person entitled to receive it, so that when their respective rights are settled nothing further remains in controversy. As a rule when two persons assert a claim to the same debt, the debtor may call upon the court to protect him from paying it to both claimants, and also from the vexation of the suits which are, or possibly may be instituted against him: 2 Story's Eq. Jur., §§ 806, 807 and notes; Br. Eq. 229. By the act of June 13, 1836, P. L. 789, since extended throughout the state, the Court of Common Pleas have the power and jurisdiction of courts of chancery so far as relates to " the determination of rights to property or money claimed by two or more persons, in the hands or possession of a person claiming no right or property therein." The petition in the case in hand, as amended, is in conformity with the fourth section of the act of March 11, 1836, authorizing and regulating interpleader proceedings in the district court of Philadelphia. This was by the act of March 27, 1848, extended to the counties of Berks and Schuylkill. For these reasons we think the rule granted in this case should be discharged.

And now, August 10, 1885, rule discharged: And it is hereby ordered and directed that an issue be formed in which the question shall be, whether the right to demand and receive the balance of two thousand dollars admitted to be due by P. W. Sheafer on his due bill to Isaac P. Bechtel, dated May 9, 1883, passed by an agreement between said Isaac P. Bechtel and said Zacharia Batdorf, in which issue the said Zacharia Batdorf shall be the plaintiff, and the said Isaac P. Bechtel for use the defendant.[2]

To this order the plaintiff excepted. Subsequently the issue, formed as directed, was tried and a verdict returned in favor of Batdorf, the plaintiff therein, and on judgment, Bechtel as plaintiff in the original took this writ, assigning as error:

1. The order directing the interpleader.[1]

2. The order refusing the plaintiff's motion for judgment and directing the issue to be formed.[2]

*Mr. F. W. Bechtel* (with him *Mr. J. B. Reilly*), for the plaintiff in error :

The act of March 27, 1848, P. L. 265, "relating to interpleading in Berks and Schuylkill counties," was founded on the British statute 1 & 2 Wm. IV. c. 28, the decisions under which are applicable to our practice : 1 T. & H. Pr. (1880) 272. Our statute referred to, is a transcript of the act of March 11, 1836, P. L. 76, conferring jurisdiction on the District Court of Philadelphia. In our opinion the British statute is more comprehensive than ours and the decisions construing it apply with greater force.

1. The action here is an action of assumpsit founded upon the express contract and undertaking of Sheafer. Sheafer by his due bill incurred a personal liability to Bechtel ; he became his debtor for an undivided one fourth of the Martin Horn tract ; a debtor by express contract, not a finder of money, not a depositary of money, not a stakeholder of money to which he had no title ; but a debtor, the money to be recovered in the action to be paid out of his own proper funds.

2. The action is in the name of the legal plaintiff against the legal defendant, and the recovery, if one is had, is on the title of the legal plaintiff. In a subsequent action founded on the same contract, Sheafer could plead the verdict and judgment at the suit of the legal plaintiff as a complete bar. The defendant has no concern with any one but the legal plaintiff. Though a use plaintiff also is on the record, he cannot inquire into the legal relations between the legal and equitable plaintiffs, for the reason that the recovery is upon the title and cause of action in the legal plaintiff.

3. The plaintiff's title and claim against the defendant resting, not merely upon the right of property, but also upon the personal contract of the defendant, the defendant having made a bargain with the plaintiff which he must perform, the orders directing the interpleader and forming the issue were erroneous : Lindsey v. Barron, 60 E. C. L. (6 C. B., M., Gr. & S.) 280 ; Patorni v. Campbell, 12 M. & W. 276 ; James v. Pritchard, 7 M. & W. 215 ; Horton v. Devon, 4 Exch. 497 ; Turner v. Kendal, 13 M. & W. 170 ; Slaney v. Sidney, 14 M. & W. 800 ; Crawshay v. Thornton, 14 Eng. Ch. 1 ; Dalton v. Railway Co., 74 E. C. L. (C. B.) 457 ; Haggart v. Cotts, 1 Cr. & Ph. 197 ; 2 Story Eq. J., § 801.

*Mr. Guy E. Farquhar* (with him *Mr. N. Heblich*), for the defendant in error: .

1. The decisions relied upon by the plaintiff are all cases where the money was claimed by different parties in different rights. In the present case, Sheafer admits his liability to Bechtel upon the contract made with him, but avers that since such liability accrued Bechtel had made an equitable assignment of his rights, of which assignment Sheafer had had notice. There was but one question, therefore, raised by the petition: Whether Bechtel had or had not assigned his right to receive the money to Batdorf. Sheafer was a mere stakeholder: Stewart v. Smith, 1 Phila. 42.

2. But, independently of the act of 1848, the courts of this state have exercised the common-law process of interpleader: Brownfield v. Canon, 25 Pa. 301; Berks v. Levan, 86 Pa. 360; Armstrong v. Lancaster, 5 W. 69; Crawford v. Stewart, 38 Pa. 34.

OPINION, MR. JUSTICE CLARK:

On May 9, 1883, Peter W. Sheafer executed and delivered his due bill to Isaac P. Bechtel, in which he acknowledged himself to be indebted to Bechtel in the sum of $6,821.92, payable as therein stated; and on February 15, 1884, an action of assumpsit was brought against Sheafer, in the Court of Common Pleas of Schuylkill county, in the name of Isaac P. Bechtel to the use of Horatio Jones, trustee, etc., to recover $2,000, the balance remaining unpaid thereon. After the declaration was filed and before the plea was entered, the defendant, admitting the debt, averring his readiness to pay to the person entitled, and, offering to bring the money into court, filed a suggestion, that the right to receive it was claimed by one Zacharia Batdorf, a person not a party to the suit, and therefore praying the court to make such order and decree as might be necessary for his protection, etc. A rule to show cause, etc., properly served upon the plaintiff and also upon the claimant, was subsequently, on hearing, made absolute, and Batdorf and Bechtel were directed to interplead. The question of the defendant's right to an interpleader having been afterwards renewed, the court refused to recede from its former decree and to enter judgment for want of an affidavit of de-

fence, but directed "an issue to be formed to determine whether the right to receive the money passed under the alleged assignment to Batdorf;" in which issue Bartdorf was made plaintiff, and Bechtel, for use, etc., defendant. On September 22, 1885, a verdict in the feigned issue was rendered in favor of Batdorf, and the single question now for consideration, as we understand the case, is whether or not the court had jurisdiction to direct the issue.

The proceedings for interpleader would appear to have been instituted with particular reference to the provisions of the special statute of March 27, 1848, entitled, "an act relating to interpleading in Berks and Schuylkill counties," P. L. 265; but as this local act is substantially a transcript of the 4th and 5th sections of the act of March 11, 1836, P. L. 76, conferring certain equity powers upon the District Court of Philadelphia, the provisions of which were, by the act of February 14, 1857, P. L. 39, extended to the Courts of Common Pleas throughout the commonwealth, the question for consideration is one of general interest; and as the sections referred to of the act of March 11, 1836, are founded on the English Statute of 1 and 2 William IV., c. 58, the decisions of the English courts upon that statute may with propriety be referred to in the construction of ours.

The plaintiffs contend, that as there was a direct and express contract relation subsisting between Sheafer and Bechtel, by the terms of which Sheafer obliged himself to pay to Bechtel the amount of the bill, the former could not disclaim all interest in the subject matter, so as to occupy the place of a mere stakeholder, and was not, therefore, entitled to raise an interpleader between Bechtel and Batdorf.

It is true, as a general rule, the party seeking relief by an interpleader must not have incurred any independent liability to either of the rival claimants; if he have expressly acknowledged the title or right of one of them, and agreed to hold the property for him, or, disregarding the adverse claim of one, has by contract made himself liable in any event to the other, he cannot be said to stand indifferent between them. Illustrations of this rule are found in the several cases cited by the plaintiff in error. In Crawshay v. Thornton, 2 My. & Cr. 1, the general nature of the remedy by interpleader is fully dis-

cussed. In that case, A., as the agent of B., deposited certain iron with C.; D. claimed to be the owner of the iron, not only under assignment from A., but by an independent acknowledgment and undertaking of C. that he held it at D.'s disposal; it was therefore held, that owing to the independent obligation of C. to hold the iron for D., he had no right to an interpleader between B. and D. "The case tendered by every bill of interpleader," says MAULE, J., "ought to be that the whole of the rights claimed by the defendants may be properly determined by litigation between them; and that the plaintiffs are not under any liabilities to either of the defendants beyond those which arise from the title to the property in contest; because if the plaintiffs have come under any personal obligations, independently of the question of property, so that either of the defendants may recover against them at law without establishing a right to the property, it is obvious that no litigation between the defendants can ascertain their respective rights, as against the plaintiff."

Horton v. The Earl of Devon, 4 Exch. 496, is a case precisely similar. The defendants, who were wharfingers, had certain goods deposited at their wharf by A., who transferred them to B.; B., by order, transferred them to the plaintiff, at the same time acquainting the defendants with the fact. The defendants thereupon placed the goods to the plaintiff's account on their books, and informed him of their having done so; A. and other parties subsequently laid claim to the goods, on the ground that the transfer to the plaintiff was fraudulent. But the right of the plaintiffs, as against the defendants, was supposed to be altogether independent of the question to whom the goods in truth belonged, and it was held, that the defendants were not entitled to an interpleader. So in Lindsey v. Brown, 60 E. C. L. 289, the personal obligation of Barrow to hold the box of plate for Lindsey, was independent of the question of the rightful ownership, as between Lindsey and Medley, the claimants; and in Patorni v. Campbell, 12 M. & W. 276. Campbell had incurred a personal obligation to Patorni, independently of the actual ownership of the bill in dispute, by his agreement to hold it subject to his disposal under his assignment; and in both cases it was held, that the remedy by interpleader did not apply. To the same effect are the

cases of James v. Pritchard, 7 M. & W. 213, and Dalton v. Midland Railway Co., 74 E. C. L. 457; whilst the doctrine of Slaney v. Sidney, 14 M. & W. 800, and Turner v. Kendal, 13 M. & W. 171, is simply this: that under the act of 1 and 2 William IV., an interpleader will not be awarded to relieve a party under an express promise to pay or perform, against an antagonistic and independent claim. The same rule prevails, also, where an independent liability must of necessity arise out of the very nature of the relation subsisting between the parties, with respect to the subject matter of dispute, as between landlord and tenant, attorney and client, etc.; for, as a general rule, a tenant cannot deny his landlord's title, nor an attorney his client's right to money received for him as such; nor can a bailee ordinarily raise an interpleader between his bailor and one who asserts an independent antagonistic and paramount title. But even a tenant who is under an express promise to pay rent, may interplead his landlord and an opposing claimant, when the title of the latter is derived from the lessor after the lease; or generally, when there is privity between the claimant and the lessor; as, for example, when the relation of mortgagor and mortgagee, trustee and cestui que trust, assignor and assignee, etc., has been created between them; in such case, the tenant does not dispute the landlord's title. So, in the case of an attorney, agent or bailee, whenever the third person claims the debt or thing under a title derived from the bailor or principal, by assignment, sale or mortgage, subsequent to the bailment or agency, he may compel the parties to interplead, for there is no denial of the original title or right; the only dispute is, as to the effect of the subsequent act: Pom. Eq., 1326-7, note, and cases there cited. On the other hand, a party to a contract may interplead his co-contractor and other persons who, in like manner, derive their title from, or are in privity with him: Pom. Eq., supra.

These general principles, with the exceptions stated, are applicable, whether the proceedings are in the law or the chancery forms; for it is essential, both in law and equity, that the party seeking relief by interpleader shall have no interest in the subject matter.

The mere fact that a contract relation existed between Sheafer and Bechtel, by the terms of which Sheafer was bound to pay

the money to him, will not necessarily deprive Sheafer of the right to an interpleader. In Pennypacker's App., 57 Pa. 114, a debt was due on a judgment bond given by Worth to Gause; the judgment was assigned to Ann Watson, who afterwards assigned to Buckwalter; Pennypacker, administrator, etc., claimed the money, alleging that the assignments were without consideration and fraudulent, and that Gause held the money as agent for John F. Watson, of whose estate he was administrator. He gave notice of his claim. Executions having been issued Worth paid the money into court, and obtained a rule on the claimants to interplead under the statute; and although a direct and express contract relation existed between Worth and Gause, it was held by this court to be the precise case for the application of the law of interpleader either voluntarily or compulsorily. So in Coates v. Roberts, 4 R. 100, the verdict and judgment on an interpleader in a foreign attachment for a common debt upon contract was held to be conclusive upon the claimant, who had notice under the practice at common law and failed to defend. In Brownfield v. Canon, 25 Pa. 299, the action was in assumpsit for a debt due to a contractor, and although the claimant voluntarily appeared and interpleaded, the case is also worthy of consideration here on a question of jurisdiction. See also McCoy v. McMurtrie, 12 Phila. 180.

It is true, nevertheless, that the proceeding cannot be sustained by a party who has any personal interest in the subject of controversy: Dohnert's App., 64 Pa. 314; Bridesburg Manufacturing Co.'s App., 106 Pa. 275. The party applying for it must occupy the place of a mere stakeholder, without any rights of his own to be litigated. The object of the proceeding is to determine to which of several claimants he shall pay the debt or duty, about which there is no dispute except as to the person entitled to receive it, so that when their respective rights are settled nothing further remains in controversy. In this case it is clear that Sheafer had no controversy with either of the claimants as to his indebtedness, or the amount of it. In proof of this, he offers, if the court shall so direct, to bring the whole sum into court, and if either party had desired this to be done, it doubtless would have been done. The better practice in such cases is to order the money into court, but this,

we think, if the offer to do so was distinctly made, was not essential to the exercise of the power of the court in the framing of an interpleader.

The suit was properly brought in Bechtel's name. A recovery could not have been had in any other form, and if Sheafer had not admitted the debt and offered to pay the money into court, Batdorf would have been obliged, in order to establish his right, either to resort to some independent and collateral proceeding, or to give notice, promote the recovery, and ultimately to rule the money into court. But by offering to bring the money into court Sheafer assumed the relation of a stakeholder to the contesting claimants, and if he complied with all the orders of the court in this behalf, it was his right to be relieved of litigation and further costs.

The phrase in the first section of the act of 1848, "which have lawfully come into the hands or possession of the defendant," has special reference, we think, to "goods and chattels," and not to money. The language may, it is true, be read to apply to both, but the effect of such a construction, especially if the words are taken in the sense suggested by the counsel for the plaintiff in error, would be to so restrict the operation of the act that it would be applicable to a very small class of cases indeed. The general manifest purpose of the statute, and the well established practice under it, would not justify us now in giving to it this narrow and restricted operation.

The judgment is affirmed.