# THE HOME LIFE INSURANCE CO. OF NEW YORK *vs.* CAULK BROS. ET AL.

*Bill of Interpleader—Affidavit Thereto—Offer to Bring Money Into Court—Strict Neutrality Between Claimants Required of Plaintiff in Such Bill—When Garnishee in Whose Hands Different Attachments Have Been Laid May Not File a Bill of Interpleader.*

A bill of interpleader should be accompanied by an affidavit that the bill is not filed by the plaintiff in collusion with any of the defendants ; and the absence of such affidavit makes the bill demurrable.

Upon a bill of interpleader the money must either be brought into Court or there must be an offer to do so ; otherwise a demurrer lies to the bill.

Where a bill in equity is without a necessary affidavit and there is no docket entry or writing filed in the case showing that the affidavit was made, the defect cannot be remedied on appeal by depositions taken under a writ of diminution showing that an agent of the plaintiff had appeared in the Court below and there made such affidavit.

The fact that several attachments by different persons are laid in the hands of a person holding funds belonging to the defendant debtor, does not itself entitle such garnishee to file a bill of interpleader against creditors, but there may be cases in which such relief is proper.   In such case, however, the bill must be filed before judgment has been obtained in any of the attachments against the garnishee.

Plaintiff in this case held a sum of money to which S. was entitled. Several attachments on judgments against S. were laid in plaintiff's hands to affect the money, and upon three of these judgments of condemnation were entered.   Plaintiff then filed a bill of interpleader alleging that the aggregate of the attachments was greater than the sum in his hands ; that some of the creditors of S. contended that the judgments of certain other attaching creditors were void, and praying that the parties might interplead ; that certain of the defendants be restrained from further prosecution of their suits, and that the judgments obtained by others be declared void.   *Held,*

1st. That the bill could not be maintained because plaintiff was not a mere stakeholder occupying a neutral position between the defendants, but was interested in having the judgments upon which condemnation was had either vacated or established.

2nd. That the bill was also liable to demurrer because the attaching

·creditors are entitled to priority in the order to which the attach-
·ments were laid ; and if plaintiff permitted judgments of condemna-
·tion to be rendered against him by reason of his neglect to make
proper defence, he cannot now require other attaching creditors to
·contest the claims of those who obtained this advantage.

Appeal from an order of Circuit Court No. 2, of Balti-
·more City (STOCKBRIDGE, J.), sustaining a demurrer to the
·bill of complaint.

The cause was submitted to the Full Bench on briefs by
*Edwin J. Farber,* for the appellant, and *G. W. S. Musgrave,*
for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellant filed a bill of interpleader against a number
·of creditors of Edward Seward, including the appellees, who
demurred to the bill, and the Court below having sustained
·the demurrer this appeal was taken.

It is alleged that the appellant had issued a policy of in-
·surance to cover loss by fire on certain property of Edward
.Seward and that a fire having occurred there was an ascer-
tained loss of four hundred dollars, which the appellant was
·willing to pay to the proper party or parties ; that after the
·fire attachments on judgments recovered in Dorchester
·County against Seward were " instituted in the Courts and
·before a certain Justice of the Peace of Baltimore City,"
and laid in the hands of the appellant as garnishee of Sew-
.ard.    No copies of the judgments were filed, but the names
·of the parties and the amounts of five attachments issued by
a Justice of the Peace were given and also the same informa-
·tion as to five others, " instituted " in the Superior Court of
Baltimore City.    Some other parties apparently have judg-
ments, but no information is furnished as to them.    The
.allegations in the bill are by no means as clear as they
should be, but we understand from them that there are
·three sets of creditors, each claiming the fund in the hands
·of the appellant.    Judgments had been rendered in the at-
·tachment cases before the Justice of the Peace against the

appellant, and the plaintiffs threatened to issue executions thereon, but other creditors allege that those judgments are void.   Incidently it is stated that there are judgments of condemnation *nisi* on the attachments in the Superior Court. It is also alleged that the aggregate of the judgments and costs is more than double the amount in the hands of the appellant, and it is unable to decide between them.   The bill then prays that the parties may interplead and adjust their several demands and claims between themselves so that the plaintiff may have proper protection, and that three of the firms named (including the appellees) may be restrained from further prosecuting the judgments or attachments, and that those so recovered before said Justice of the Peace be declared void.

The demurrer was necessarily sustained for technical defects in the bill.   In the first place there was no affidavit that the bill was not filed by the plaintiff in collusion with any of the defendants.   The absence of said affidavit makes the bill demurrable.   *Amendale Institute* v. *Anderson,* 71 Md. 128 ; *Story's Eq. Pl.,* sec. 291 ; 2 *Dan. Pr.,* *page 1562.   It is sought to avoid the effect of this omission by proving that such affidavit was actually made in open Court after the bill was filed, but before the demurrer was passed on.   A writ of diminution was obtained, but the additional record only shows that after the appeal was taken and the original record was in this Court certain depositions were taken which tend to prove that before the argument of the demurrer an agent of the company appeared in open Court and made such an affidavit.   It was not in writing and there is not even a docket entry that it was made.   It is perfectly manifest that the error attacked by the demurrer was not and could not be corrected in that way.   The bill was defective because of this omission and the only way to correct it was to obtain leave to amend it, and the leave being granted the amendment should have been made either by filing a new bill, with the necessary affidavit, or by filing a written affidavit, either annexed to the original bill or sepa-

rate, yet a part of it, if the Court so permitted.    It would be a most dangerous practice and contrary to all precedent to allow pleadings in chancery to be amended as attempted in this case.    The question of fact whether there was any collusion was not before the Court on demurrer, but only whether the bill presented such a case, or was in such form as is required under the practice in this State.  The affidavit, which the authorities agree is necessary, having been omitted, the bill was defective and it could only be corrected in that particular by producing *as a part of the bill*, in such manner as the Court below allowed, an affidavit in writing that did include the necessary statement.    That not having been done the demurrer was properly sustained.

The bill was also defective because the plaintiff neither brought the money into Court nor offered to do so.    It does state that the plaintiff was willing to pay it to the parties entitled thereto, but it nowhere offered to bring it into Court for that purpose.  There is some conflict between the authorities as to whether such a defect can be reached by demurrer, but we see no reason why it cannot be under our practice.    This offer is required to prevent an abuse of this proceeding, just as is the affidavit that there is no collusion, and although a bill is not demurrable because the money is not actually brought into Court, yet when that is not done the offer to do so must at least be made.    Most, if not all the authorities, agree that the Court should not require the defendants to interplead until the money is either in Court or subject to its order.    When the decree to interplead is passed the plaintiff is practically out of Court and the defendants are left to contend for the fund.    This then being one of the essentials to obtain a decree, the offer should be made a part of the bill and a bill should not be deemed sufficient unless it embraces it.    The correct principle we think is stated in *Story's Eq. Pl.* sec. 291 ; see also *Hyde* v. *Warren*, 19 Ves. 322 ; *M. & H. R. R. Co.* v. *Clute*, 4 Paige, 384 ; *Williams* v. *Walker*, 2 Rich. Eq. 291; *Parker* v. *Barker*, 42 N. H. 78.

But if these technical objections were out of the way the bill would still be defective, because it does not present such a case as entitles the plaintiff to relief. There may be circumstances under which a garnishee can seek the aid of a Court of Equity when several attachments are laid in his hands to affect the same fund, as is stated in *Bank* v. *Beaston*, 7 G. & J. 421, but to justify it the bill must make a full and frank disclosure of all facts necessary to enable the Court to see whether he is entitled to such relief. The mere fact that a number of attachments were issued does not of itself authorize it, but the Court should be informed when they were issued and laid in the hands of the garnishee, the present status of each of them and other facts concerning them sufficient to show the Chancellor the necessity or propriety of interfering. The very foundation of his bill is that the plaintiff is a mere stakeholder and that he is wholly indifferent between the defendants. Yet this bill shows that at least three of the defendants have obtained judgments of condemnation against the plaintiff. After judgments have been obtained by one or more of the defendants against the plaintiff it is impossible for him to occupy a position of strict neutrality between the parties, as he is then interested either in setting aside the judgments, as this bill asks to have done, or in having the claims established in favor of the holders of the judgments so as to protect him against the other parties. It was held in the case if the *Union Bank* v. *Kerr & Glenn*, 2 Md. Ch. 460, that a bill of interpleader should be filed, if at all, before judgment is obtained by either of the parties to be made defendants and that is manifestly just, as the parties no longer stand on an equal footing after one has obtained a judgment for the fund in dispute or a part thereof, and the plaintiff would be interested in sustaining the claim of the one against the other. In garnishee cases attaching creditors are entitled to priority in the order in which the attachments are laid, if they are valid, and if the plaintiff has permitted judgments of condemnation to be rendered against it by reason of its own neglect in making

proper defences, it should not be permitted to require the other attaching creditors to contend with those who have thus acquired an advantage over them.　In *Bank* v. *Lanahan, Trustee*, 60 Md. 477, a trustee under a deed of trust for the benefit of creditors sought to require a number of the creditors who had issued attachments and laid them in his hands to interplead, and one of the grounds upon which it was refused was that he was entitled to commissions if the assignment was sustained, and therefore he could not be said to be an indifferent stakeholder without any interest in the subject-matter in controversy.　In this case, if the plaintiff does not succeed in having these judgments of condemnation set aside it may be liable to loss, and therefore has an interest in defeating the claims of some of the defendants. We think it clear that a formal bill of interpleader cannot be sustained under such circumstances.

The prayers of this bill show that it was intended as a formal bill of interpleader, but if that were not so, the facts alleged are not sufficient to sustain a bill in the nature of a bill of interpleader, which are more favored by Courts of Equity.　Under them plaintiffs are sometimes granted relief, although they may have some interest in the result.　The case of *Weikel* v. *Cate*, 58 Md. 105, relied on by the appellant, was a case of that character.　There Schaum obtained a judgment against Cate, and Weikel, having a judgment against Schaum before a Justice of the Peace, issued an attachment laying it in the hands of Cate.　By some mistake, without any fault of Cate, judgment of condemnation was rendered against him, although the attachment was void by reason of the fact that it was issued more than three years after the judgment was obtained, which was not then permitted on judgments of Justices of the Peace.　The Court held that under the circumstances the plaintiff was entitled to an injunction against the judgment of condemnation, but it was because it found that under the evidence the judgment had been improperly rendered without any fault on the part of Cate.　The Court did not require the parties to inter-

plead, but simply enjoined the execution of the judgment. The right to the fund between Weikel and Schaum was not determined, but Cate was granted relief as against Weikel. In this case the plaintiff has alleged no reason why the appellants were not entitled to judgments, and has not explained why it permitted judgments of condemnation to be recovered against it, or why it did not appeal to the Baltimore City Court if they were improperly rendered against it by the Justice. It is therefore not entitled to an injunction against the appellants, as it has shown no equitable ground for such relief. When the attachments were laid in its hands it was its duty to respect them and make any defences it had. If the judgments were void, as alleged in the bill, the defences should have been made before the Justice, and if the plaintiff was not satisfied with his decision it could have appealed to the Baltimore City Court. Failing to do that, it cannot now invoke the aid of a Court of Equity without at least showing sufficient reasons for the interference of that Court, which the bill wholly fails to do. We have many decisions on the subject, of which we will cite *Brumbaugh* v. *Schnebly*, 2 Md. 320 ; *Windwart* v. *Allen*, 13 Md. 197 ; *Lyday* v. *Douple*, 17 Md. 188 ; *Chappell* v. *Cox*, 18 Md. 513 ; *Ahern* v. *Fink*, 64 Md. 161.

But in addition to this the order in which the attachments were served is not stated in the bill, and it may be that the appellants are entitled to priority over the other creditors. If that be so there is no reason assigned why the plaintiff cannot fully protect itself by proper defences in the other cases. So if we could treat this as a bill in the nature of a bill of interpleader, there are no such equities alleged as would authorize the interposition of a Court of Equity against the appellants. The order sustaining the demurrer must be affirmed.

> *Order affirmed, with costs to the appellants.*

(Decided December 1st, 1897)