## JOSHUA HORNER, JR.,

*vs.*

## CLARENCE M. LEHMAN AND SAMUEL ROTH, Co-PARTNERS, TRADING AS LEHMAN & ROTH.

AND

## JAMES F. CLARK

*vs.*

. SAME.

*Interpleader: money paid into court; effect of decree; discharge of complainant.*

A plea of interpleader should be allowed where it is proper that the disinterested custodian of a fund should be relieved of the annoyance and burden of litigation to determine its proper application; and in such a case the various claimants should be directed to join issue among themselves in a proceeding where all their asserted rights may be considered and the question of priority of interest determined.                    p. 279

In general, in interpleader proceedings, where the fund is paid into court, the effect of the decree is to discharge the complainant from the case, and to provide a proceeding in which the defendant may litigate his adverse claim.                    p. 280

In general, in interpleader proceedings the litigation should be confined to the proceeding in which the relative rights of the parties can be simultaneously considered and fully determined by one adjudication                    p. 281

*Decided February 2nd, 1917.*

Two appeals in one record from the Circuit Court of Baltimore City.   (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joshua Horner, Jr.,* and *Walter D. Eiseman,* for the appellants.

*George Arnold Frick,* for the appellees.

URNER, J., delivered the opinion of the Court.

In April, 1914, James F. Clark, trading as Clark & Company, sold to the firm of Lehman & Roth his stock of merchandise, and the good will of his business, located on North Charles street, in the City of Baltimore. The terms and conditions of the sale were set forth in a written agreement by which it was provided, that the purchase price should be thirteen thousand dollars, of which $1,024 was acknowledged to have been paid in cash, and that $3,500 of the amount should be evidenced by three promissory notes for $1,166.66 each signed by the vendees and payable to the vendor, and indorsed to the satisfaction of Mr. Douglas H. Thomas, one of the notes to mature in two months, and the other two in four months, after date, and that the remaining $8,476 of the purchase money should be applied by the vendees to the payment of merchandise accounts of the vendor to that amount. It was stipulated that if the vendor's merchandise accounts should be less in amount than the fund of $8,476 retained for their payment, the balance of the fund should be paid to the vendor, and if the accounts should exceed the sum of $8,476, the vendor should pay them to the extent of such excess. There was a provision for a bond to be given by the vendor, with a satisfactory surety, in the sum of $5,000, indemnifying the vendees from any loss or liability growing out of the existence of any indebtedness by the vendor exceeding in the aggregate the reserved sum of $8,476. The precaution thus taken for the payment of the vendor's debts, and for indemnity to the vendees, were

prompted by the fact that the sale of the stock in trade and business was being made without notice to creditors and observance of the other conditions prescribed by statute for such transactions. Code, Art. 83, secs. 19-20. By a supplementary agreement in writing it was provided that the bond required for the protection of the vendees against claims of the vendor's creditors might be given without surety, but that one of the three notes for $1,166.66 each should be placed in the hands of Mr. Douglas H. Thomas as collateral security for the performance by the vendor of his obligations under the bond until the maturity of the note, when it should be delivered to the vendor and become payable, if the latter were then not in default under the conditions of the bond. It was agreed, however, that the bond should continue in full force and effect notwithstanding the maturity or payment of the note.

The vendees have paid the full amount of the purchase price specified in the agreement. They have applied $8,476 to the vendor's merchandise accounts and have paid the three promissory notes aggregating $3,500. It having developed that the merchandise accounts were in excess of the sum devoted to their payment, the note placed in the hands of Mr. Thomas as collateral to the bond, was paid to him by the vendees with the request that he hold the fund until the existing debts of the vendor were paid by him or were barred by limitations. The vendor, on the other hand, demanded the fund from Mr. Thomas, and attachments were laid in his hands at the suit of some of the vendor's creditors. In order to be relieved of this complication Mr. Thomas filed a bill of interpleader to which the vendor and vendees, and the attaching creditors of the former, were made parties. The bill stated the circumstances under which the fund in dispute came into the plaintiff's hands, and the fact that he was merely a stakeholder without interest in the controversy, and prayed that the defendants be required to interplead and that they be enjoined from prosecuting any attachment

or other suit against the plaintiff with respect to the fund involved in their conflicting claims. A decree of interpleader and injunction was passed in accordance with the prayer of the bill of complaint. Subsequently a petition was filed by the vendees alleging that the vendor was prosecuting a suit at law against them for the amount of the promissory note in question, and that one of the vendor's creditors was pressing an attachment issued on a judgment against the vendor, and laid in the vendee's hands, before the filing of the bill of interpleader. The petition averred that it was the purpose of the decree passed in the interpleader suit that all claims asserted by the defendants to the fund in controversy should be determined in that proceeding. It was accordingly prayed by the petition that the vendor and attaching creditor be restrained from prosecuting their claims in the pending suits at law. An injunction to that effect was ordered, and it is from the refusal of the Court below to dissolve the injunction on motion, after answer filed, that the two defendants referred to have appealed.

In his answer to the petition of the vendees it was alleged by the vendor that he was entitled to have delivered and paid to him at maturity the promissory note placed in the hands of Mr. Thomas under the agreement, and he denied that he was then in default under the terms of his bond, and stated that the note was paid to its custodian long after its maturity and after the action at law restrained by the injunction had been instituted. The attachment enjoined, in accordance with the prayer of the petition, was said by the answer to have been laid in the hands of the vendees before they paid over the money sought to be attached, and it was claimed that the plaintiff in that action was entitled to proceed for the recovery of a judgment *in personam* against the garnishees, which would not concern or affect the fund involved in the interpleader suit. It was further averred in the answer that the petition in effect sought to accomplish the purposes of a bill of interpleader and that the petitioners were de-

barred by their interest and conduct from resorting to that method of having the dispute determined. The attaching creditor's answer to the petition was similar to that filed by the vendor. At the hearing of the motion to dissolve the injunction issued on the vendee's petition, testimony was taken on the offer of the present appellants to prove that the note in Mr. Thomas' custody was retained by him after its maturity at the request of the makers, and on the advice of his counsel, because of an alleged non-compliance with certain provisions in the agreement between the parties, and to show further that the note was not paid until January 16, 1914, more than four months after it was due.

The appeal now before us raises no question as to the decree of interpleader, requiring the defendants to litigate in that proceeding their opposing demands in reference to the fund therein held for disposition. It was undoubtedly proper that the disinterested custodian of the fund should be relieved of the annoyance and burden of litigation to determine its proper application, and that the various claimants should be directed to join issue among themselves in a proceeding where all their asserted rights may be considered and the question of priority of interest adjudicated. The interpleader decree restrained the prosecution of attachment or other suits against the plaintiff stakeholder in reference to the fund in his hands. It did not specifically enjoin such actions between or against the parties to the sale in which the fund originated, who claim a contractual interest in its ownership or application. The injunction issued on the petition filed subsequent to the decree of interpleader prohibited the prosecution of pending actions against the vendees from whom the stakeholder received the disputed fund, and to that extent it may be regarded as having amplified the literal terms of the injunction first decreed. But it was the evident intent of the original decree that those who had been named as defendants in the bill of interpleader should litigate their claims

in that suit, and the supplemental restraining order simply gave more specific expression and effect to that purpose.

The main contention of the appellants is that the petition filed by the appellees was in itself an interpleader proceeding, and a number of reasons are assigned why it is not maintainable for such an object by parties in the attitude of the petitioners. It is not necessary to review the argument made in support of this theory, because we do not regard the petition as having the character and purpose which the theory assumes. There was no proposal in the petition that the parties interplead, except as required by the decree already entered in the case. The original decree directed such a procedure, and the petition did not seek to enlarge the scope of that requirement. The order passed upon the petition made no provision for interpleading, but only restrained the defendants from prosecuting separate actions against the petitioners, relating to the same subject-matter, until a decision was rendered in the interpleader suit then pending.

The effect of the decree of interpleader, and payment of the fund into Court, was to discharge the complainant from the case, and to provide a proceeding in which the defendants should litigate their adverse claims. *Home Life Ins. Co.* v. *Caulk,* 86 Md. 385; *Wilmer v. Phila. & Reading C. & I. Co.,* 124 Md. 606; 23 *Cyc.* 31. Complete jurisdiction was thus acquired over the fund in dispute and the opposing parties by whom it was sought to be recovered. The purpose of the decree and the jurisdiction thereby assumed might be largely defeated if the claimants of the fund were at liberty to institute or proceed with independent litigation among themselves upon the issue as to which they were ordered to interplead. Each of the two defendants, here contending for such a right, seeks to recover a personal judgment against a third defendant by virtue of his liability for the payment of money which is now in Court subject to any valid claim they may assert. They are parties to a proceeding in which all the questions they desire to raise as to the disposition of the

fund can be presented and decided, and in which their claims, if sustained, can be fully enforced. The essential issue upon which the application of the fund depends is whether the sale note held in custody as collateral to the vendor's bond, should have been delivered and paid to him at maturity, or whether he was then in default under the bond and the vendees were thus entitled to have the note and its proceeds reserved as security for the performance of the vendor's covenant of indemnity. This is the ground of the controversy which occasioned the interpleader suit, and of which jurisdiction has been taken in that proceeding. If the issue thus defined should be decided in favor of the vendee, it would be established that he was not amenable to either of the suits which the appellants desire to prosecute. If they could proceed with their separate actions at law against the vendee, there would be the possibility of different verdicts being reached upon the same issue. The terms of the interpleader decree, and the practical ends of justice, require that the litigation be confined to the proceeding in which the relative rights of the parties can be simultaniously considered and fully determined by one adjudication.

*Order affirmed, with costs.*