CHAS. H. STEFFEY, INC., *v.* AMERICAN BANK STATIONERY COMPANY.

[No. 32, April Term, 1931.]

*Decided June 11th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander,* with whom was *Nathan Patz* on the brief, for the appellant.

*Laurie H. Riggs,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer to a bill of interpleader filed by a vendor of real property, in which it asks that three real estate agents be required to contest amongst themselves the merits of their respective claims for the commission, and leave the vendor out of it. One of them, however, the appellant, questions by demurrer the right of the appellee to join it in the proceeding, on the ground that the appellee is not a disinterested party in the distribution of the commission, it having, at the consumma-

tion of the sale, agreed with the vendee of the property to pay the appellant the usual real estate commission, it having acknowledged its obligation to pay the appellant, and it having made a payment on account, all of which appears on the face of the bill.

The first and second paragraphs of the bill of complaint contain all of the facts alleged upon which the appellant bases its contention that no bill of interpleader can be maintained by the appellee as to it (the appellant), and are as follows:

"First: That it is a corporation incorporated under the Laws of the State of Maryland, and engaged in the printing and lithographing business in Baltimore City, Maryland. That since 1920 and until February 6th, 1931, your orator was the owner of the premises on the northeast corner of Pratt and Commerce Streets, Baltimore City, Maryland. That for the past several years your orator has advertised said property for sale, and in order to sell said property, offered to pay to any person who was the efficient procuring cause in the sale of said property to a purchaser and at a price satisfactory to your orator, the regular real estate broker's commission as established by the Real Estate Board of Baltimore City. That your orator, to protect itself from paying a double commission for the sale of the said property, steadfastly refused to give to any person or persons the exclusive agency to sell said property, although the same was requested by many persons, including one or more of the defendants in this case.

"Second: That on January 6th, 1931, your orator entered into a written contract to sell said property to the Baltimore Post for the sum of ninety thousand dollars ($90,000). That in the same contract, believing that the defendant, Chas. H. Steffey, Inc., was the efficient procuring cause of said sale, and having no knowledge of anyone else being entitled to or claiming said commission, your orator agreed to pay to said Chas. H. Steffey, Inc., the full commission for the said sale, amounting to twenty-three hundred and sixty-two dollars and fifty cents ($2,362.50), and it actualy paid to the said Chas.

H. Steffey, Inc., the sum of five hundred dollars ($500) on account of said commission."

The bill then goes on to say that on January 19th, 1931, B. K. Brendle, and on January 27th, 1931, Thomas W. Burke, the other defendants, had respectively demanded the entire commission on the sale as the efficient procuring cause of sale; that the defendant, Chas. H. Steffey, Inc., appellant here, "has demanded and claims that the balance of said commission, amounting to $1,862.50, shall be paid to it, and on February 7th, 1931, instituted suit for the recovery of the same," against the appellee, and "is apprehensive that the other claimants will sue it for said commission"; that the appellee "is willing to pay one commission for the sale of said property, but does not want to be put to a double or triple liability for the same," and because it is unable to decide the controversy (which the bill sets up), "or to make any payment thereof in such manner as would protect it against the claims or suits of other claimants"; that the appellee "has no charge or interest whatsoever in said sum of $2,362.50, and offers to pay the money into court, and prays that the defendants be required to interplead, and the appellant, Steffey, Inc., be restrained from prosecuting its suit at law," whereupon an order was passed granting the writ of injunction against the appellant as prayed upon the payment into court of $2,362.50, and that process be issued against all of the alleged claimants. It is apparent that the fear of the appellee is that it shall be "put to a double or triple liability" for the commissions as much as the annoyance and defense of the various claims. The right to the remedy by interpleader is founded, not on the consideration that one may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability. *Pfister v. Wade,* 56 Cal. 43.

The essential elements of the right to an interpleader, are:

"1. The same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded; 2. All their adverse titles or claims must be dependent, or be derived from a common source; 3. The person asking the

relief—the plaintiff—must not have nor claim any interest in the subject matter; 4. He must have incurred no independent liability to either of the claimants; that is he must stand perfectly indifferent between them, in the position merely as a stakeholder." 1 *Pomeroy, Equitable Remedies,* sec. 43 (5 *Eq. Jur.,* p. 70). And in section 52 it is stated that one "may have expressly acknowledged" the title of one of the claimants, "or may have bound himself by contract, so as to render himself liable upon such independent undertaking, without reference to his possible liability to the rival claimant upon the general nature of the entire transaction. Under these circumstances, as the plaintiff is liable at all events to one of the defendants, whatever may be their own respective claims upon the subject matter as between themselves, he cannot call upon these defendants to interplead."

In *Miller's Equity Procedure,* 825, it is stated that "the position of the plaintiff should be one of continuous impartiality. His position is that of a stakeholder; he has no interest in the issue, and cannot be affected by the final decree in the cause."

In *Union Bank of Maryland v. Kerr,* 2 Md. Ch. 460, and *Home Life Ins. Co. v. Caulk,* 86 Md. 385, 38 A. 901, it was held that, after judgment in favor of one of those sought to be made defendant in interpleader, it was too late to invoke the remedy, as the plaintiff was not then a mere stakeholder; the liability to one of them having already been determined.

The fact that one of the claimants of the fund has sued the plaintiff or stakeholder is not of itself a bar to the right to an interpleader, the test being whether he is interested in the outcome to the claimants to a fund, and the mere fact that the appellant has sued the appellee on his claim would not deprive the appellee of the right to compel those claiming the commission to settle their differences. In the leading case of *Bechtel v. Sheafer,* 117 Pa. 555, 11 A. 889, Sheafer gave his due-bill to Bechtel for $6,821.92. Bechtel, for the use of Horatio Jones, trustee, sued Sheafer to recover the unpaid balance of the note. Demand was made by Batdorf on Sheafer, Batdorf claiming by assignment from Bechtel.

It was held proper for interpleader, as both claims came from the same source, with only one liability. This is, in effect, the situation in *Phillips v. Taylor,* 148 Md. 157, 129 A. 18, where Taylor sold timber to Phillips, who agreed to pay him $2,500 for it, and gave Taylor his note for $100 on account. Mrs. Ross claimed a half interest in the property, and Phillips thereupon refused to pay the note, and Taylor had a judgment for $100 entered by confession against Phillips, who then filed a bill of interpleader against Taylor and Mrs. Ross, which was upheld: there being no question of the limit of the liability of Phillips to the total sum of $2,500, and that being the limit of the conflicting claims of the defendants. *Zihlman v. Zihlman,* 75 Md. 372, 23 A. 1093, is the other case in this court on which the appellee places its chief reliance for its contention. The Cumberland Glass Company had been paying royalties on a patent to Anthony Zihlman. Joseph Zihlman claimed a half interest in the device patented to Anthony, and there was thus a conflict between the claimants as to but one-half of the royalties. It was held that the glass company had no interest in the outcome, as the litigation could not result in any increase of its liability, no matter how the dispute between the brothers terminated. These are the cases upon which the appellee appears to rely, but neither of them touches the point here raised by the appellant, and that is, that it has a special contract whereby the appellee has acknowledged its liability to it to pay the sum of $2,362.50, on account of which it has paid $500, and that the appellant has no dispute with Brendle and Burke over the commissions; there being no charge that they have any interest in the promise of the appellee to pay commissions to the appellant. If the appellee has placed itself under an obligation to the appellant, it is plain that that obligation cannot be determined by litigation between the appellant and the others claiming commissions on the sale. The attitude and position of the plaintiff must be one of strict neutrality, with no interest in the claims or pretensions of any of them. *Standley v. Roberts* (C. C. A.), 59 F. 836; *Ludlow v. Strong,*

53 N. J. Eq. 326, 31 A. 409; *Sprague v. Soule,* 35 Mich. 35; note, 10 *L. R. A. (N. S.)* 758; *Richardson v. Belt,* 13 App. D. C. 197; *Slaney v. Sidney,* 14 Mees. & W. 800; 14 *Standard Ency. of Procedure,* 168, etc.

In *Little & Green v. Davis,* 140 Ga. 212, 78 S. E. 842, 844, cited by appellant, the case under consideration has, with the exception of one feature, its twin. In that case there was an acknowledgment and promise by the owner to pay the broker in the agreement of sale signed by owner and purchaser. W. L. and J. O. Dupree, brokers, also claimed commissions for the sale and threatened suit. The owner, Davis, then filed a bill of interpleader against Little & Green and the Duprees. Little & Green demurred, and the demurrer was overruled, and the court said, properly, because it appeared from the bill that the plaintiff was an innocent stakeholder, and required Little & Green to answer, which they did by setting up a special contract and promise of the plaintiff to pay them the commission. The Supreme Court, in reversing the decree of the lower court, said: "Under Davis' theory of the case, as developed by the evidence, he was interested, as against Little & Green, to the extent of removing them from the advantageous position of the holder of a written promise to pay, to a level with the other claimants of the debt, W. L. & J. O. Dupree, as mere claimants of the fund, with the validity of that claim depending upon the establishment of the fact that they had effected the sale. Having under the evidence been divested of the character of a mere stakeholder, Davis was no longer in position to enforce his demand for interpleader between Little & Green and the Duprees." In the instant case it appears from the bill that the vendor in the agreement of sale promised the vendee to pay the commission to the appellant.

But the contract recited in the bill, a copy of which should have been filed as an exhibit, as the bill prays for an injunction, is not the only fact therein appearing which shows the appellee not disinterested; it paid the appellant $500 on account of its acknowledged claim, thereby reducing the demands of the appellant from $2,362.50 to $1,862.50, while

the claims of the other two defendants are each for $2,362.50. This payment to the appellant makes the appellee an interested party in the final outcome of the suit to the extent of that payment. Mr. Miller (*Equity Procedure,* p. 825) says: "The position of the plaintiff should be one of continuous impartiality," and it "cannot be affected by the final decree in the cause." If on the trial of the merits the appellant should prevail, the appellee would be entitled to a refund of $500, while as to the others it would not be so entitled. It is apparent from the face of the bill that the position of the plaintiff as to Brendle and Burke is one of impartiality; as to the appellant it is antagonistic. If the plaintiff has given one of the defendants a right of action against it, it cannot escape the risk of a double liability by demanding an interpleader. If this is a fact, and from the bill it so appears, the situation is one of the appellee's own making.

For the reasons stated, the decree will be reversed, and bill dismissed.

*Order reversed, with costs, and the bill dismissed.*

ADKINS, J., concurs in the result.