AETNA INSURANCE COMPANY, A CORPORATION, *Appellant*, v. R. J. EVANS, AS TRUSTEE IN BANKRUPTCY OF THE ESTATE OF R. E. HIGHTOWER AND GILBERT HARTSFIELD, PARTNERS LATELY DOING BUSINESS UNDER THE FIRM NAME OF THE TALLAHASSEE MERCANTILE COMPANY OF TALLAHASSEE, LEON COUNTY, FLORIDA, *et al., Appellees.*

This case was decided by the Court En Banc.

Appeal from the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

TAYLOR, J.—On January 13th, 1908, the appellant as complainant below filed its bill in equity in the Circuit Court of Leon County against the appellees as defendants, below, alleging therein as follows:

"1.    That on the 23rd day of March, 1906, your orator by insurance policy numbered 1406 insured against all direct loss or damage by fire except as in said policy is provided, R. E. Hightower of Tallahasse, Florida, for the term of one year from the 23rd day of March, 1906, at noon, to the 23rd day of March, 1907, at noon, to an amount not exceeding the sum of seven hundred and fifty dollars, on his stock of merchandise, consisting principally of general merchandise, and by proper assignment made on said policy on the 29th day of October, 1906, the loss, if any, was made payable to The Tallahassee Mercantile Company, above named, as their interest might appear, and that on the 29th day of October, 1906, your orator by written policy of insurance numbered 1420 insured the above named The Tallahassee Mercantile Company for the term of one year from the 29th day

of October, 1906, at noon, to the 29th day of October, 1907, at noon, against all direct loss or damage by fire, except as in said policy provided, to an amount not exceeding the sum of five hundred dollars on their stock of merchandise, consisting principally of general merchandise; and the stock of merchandise covered by each of said policies being in the two story brick building on the north side of Jefferson street in the city of Tallahassee, Florida, and known as number 107, block 16 of Sanborn's map.

2. That on the 7th day of November, 1906, said stock of merchandise was partially and materially destroyed by fire, and that afterwards an adjustment of said loss was made by which it was ascertained by and between your orator and said The Tallahassee Mercantile Company that the amount of damage to said stock of merchandise and damages sustained by said firm was $1111.11 under said two policies, which amount your orator became liable for to said The Tallahassee Mercantile Company, the same to be payable according to the terms of said policies.

3. That at the time of said fire and loss thereby there was insurance in favor of said Tallahassee Mercantile Company on said stock of merchandise against loss and damage by fire under policies issued by the British America Assurance Company, a corporation under the laws of Canada, in the sum of seven hundred and fifty dollars, and by the St. Paul Fire and Marine Insurance Company, a corporation under the laws of the State of Minnesota, in the sum of twelve hundred and fifty dollars; and by the Georgia Home Insurance Company, a corporation under the laws of the State of Georgia, in the sum of twelve hundred and fifty dollars, and an adjustment was made between said British America Assurance Company and said assurred at $666.67; and an

adjustment was made between said St. Paul Fire and Marine Insurance Company and said insured at $1111.11; and an adjustment was made between the Georgie Home Insurance Company and said insured at $1111.11.

4. That on the 15th day of November, 1906, the said Kingan & Company instituted in the Circuit Court of the Second Judicial Circuit of the State of Florida, in and for Leon county, an action at law against said R. E. Hightower and Gilbert Hartsfield as partners doing business under the name and style of The Tallahassee Mercantile Company, and hereinafter spoken of as the 'Insured,' for the recovery of an alleged indebtedness from said insured to said Kingan & Company, and on the same day of said month there was issued from said Circuit Court on the application of said Kingan & Company a writ of garnishment against your orator, which said writ of garnishment was served on the 16th day of November, 1906, and on January 8, 1907, judgment was rendered in favor of said Kingan & Company against said insured for the sum of $243.26, principal and interest, and $10.38 costs; and on the 22nd day of March, 1907, judgment was rendered in favor of said Kingan & Company against your orator as defendant in garnishment for the sum of $97.65; that on the 15th day of November, 1906, the said Wertheimer-Swarts Shoe Company instituted in the Circuit Court of the Second Judicial Circuit of Florida, in and for Leon county, an action at law against said insured for the recovery of an alleged indebtedness from said insured to said Wertheimer-Swarts Shoe Company, and on the same day of said month there was issued from said Circuit Court on the application of said Wertheimer-Swarts Shoe Company a writ of garnishment against your orator, which said writ of garnishment was served on your orator on the 16th day of November, 1906, and on January 8, 1907, judgment was

rendered in favor of said Wertheimer-Swarts Shoe Company against said insured for the sum of $787.95, principal and interest, and $10.42 costs, and on the 23 day of March, 1907, judgment was rendered in favor of said Wertheimer-Swarts Shoe Company against your orator as defendant in garnishment for the sum of $307.37; that on the 19th day of November, 1906, the said Levy Brothers instituted in the Circuit Court of the Second Judicial Circuit of the State of Florida, in and for Leon county, an action at law against said insured for the recovery of an indebtedness from said insured to said Levy Brothers, and on the same day of said month there was issued from said Circuit Court on the application of said Levy Brothers a writ of garnishment against your orator, which said writ of garnishment was served on your orator on the same date and on the 8th day of January, 1907, judgment was rendered in favor of said Levy Brothers against said insured for the sum of $619.57 damages, and $15.06 costs, and on the 22nd day of March, 1907, judgment was rendered in favor of said Levy Brothers against your orator as defendant in garnishment for the sum of $634.63; that on the 20th day of November, 1906, the said Tallahassee Grocery Company instituted in the Circuit Court of the Second Judicial Circuit of the State of Florida, in and for Leon County, an action at law against said insured for the recovery of an indebtedness from said insured to said Tallahassee Grocery Company, and on the same day of said month there was issued from said Circuit Court on the application of said Tallahassee Grocery Company a writ of garnishment against your orator which said writ of garnishment was served on your orator on the same date, and on the 8th day of January, 1907, judgment was rendered in favor of said Tallahassee Grocery Company against said insured for the sum of $125.05, damages,

and $14.12 costs, and on the 22nd day of March, 1907, judgment was rendered in favor of said Tallahassee Grocery Company against your orator as defendant in garnishment for the sum of $58.01.

5.   That writs of garnishment   were also issued against the British America Assurance Company and the St. Paul Fire and Marine Insurance Company in the suits of Kingan & Company   and   Wertheimer-Swarts Shoe Company on the same date and served at the same time as the writ of garnishment was served upon your orator in said suit; and writs of garnishment were also issued against the above named Insurance Companies and also the Georgia Home Insurance Company in the suits against the insured by Levy Brothers, and the Tallahassee Grocery Company, on the following named dates and were served as hereinafter stated.   In the case of Levy Brothers against the insured, writs of garnishment were issued against all of the above named Insurance Companies on the 19th day of November, 1906, and served on them on the 23rd day of said month,   except that against the Aetna, which was served on the day of its issue; and in the case of The Tallahassee Grocery Company, the writs of garnishment were issued against each of said above named Insurance Companies on the 20th day of November, 1906, and served on said Companies on the 23rd day of said month, except that against the Aetna Insurance Company, which was served on the day of its issue; and on the 23rd day of March, 1907, judgment was rendered against said British America Assurance Company, as defendant in garnishment, in the principal suit of Wertheimer-Swarts Shoe Company against the insured, for the sum of $184.63; and against said St. Paul Fire and Marine Insurance Company, as defendant in garnishment in said suit, for the sum of $308.37; and on the 22nd day of March, 1907, judgment was rendered

against said British America Assurance Company as defendant in garnishment, in the principal suit of Kingan & Company against the insured, for the sum of $58.34; and against said St. Paul Fire and Marine Insurance Company, as defendants in garnishment in said suit, for the sum of $97.65; and on the 22nd day of March, 1907, judgment was rendered against said British America Assurance Company, as defendant in garnishment, in the principal suit of The Tallahassee Grocery Company vs. the insured, for the sum of $15.25; and against said St. Paul Fire and Marine Insurance Company as defendant in garnishment in said suit, for the sum of $25.32; and against said Georgia Home Insurance Company, as defendant in garnishment in said suit, for the sum of $40.59; but no judgment has been rendered against either of said above named Insurance Companies as defendants in garnishment in the principal suit of Levy Brothers against said insured, except as against the Aetna Insurance Company as above indicated.

6.    That all the above writs of garnishment were in the form prescribed by the statute of the State of Florida in such case made and provided.

7.    That on the 27th day of March, 1907, a petition was filed in the District Court of the United States for the Northern District of Florida, by J. H. McLaurin & Company, a Florida corporation, and Bass & Company, a Florida corporation, and William B. Carhart, William E. Carhart and Henry B. Carhart, partners doing business under the firm name of Carhart & Brothers, of New York City, praying that the said R. E. Hightower and Gilbert Hartsfield, partners aforesaid should be adjudged a bankrupt under the Act of Congress of the United States in such case made and provided, and on the 2nd day of May, 1907, the said Tallahassee Mercantile Company was, upon such petition adjudged a bankrupt by

said court; and on the 24th day of June, 1907, R. J. Evans of Tallahassee, Florida, was appointed Trustee of the estate of said bankrupt, and the said Evans has qualified as such trustee.

8.   That your orator has been notified by the said Evans, as such trustee in bankruptcy, that he claims the said sum of $1111.11 so found to be due to said Tallahassee Mercantile Company upon an adjustment of its losses as an asset of the estate of said bankrupt, and has demanded of your orator that it pay the said sum to him as such trustee, and he has also notified your orator not to pay said money or any part thereof to any of said plaintiffs in garnishment, he claiming that in view of and as a result of said adjudication to bankruptcy and of his appointment as such trustee he is entitled to the possession of said money as an agent of the estate of said bankrupts, and also claiming that such writs of garnishment and the service thereof did not constitute a lien upon or an appropriation of said moneys, and that such judgments did not as against the effect of such proceedings and adjudication in bankruptcy constitute such an appropriation or lien, and on the other hand, the said plaintiffs in garnishment, and particularly those who have obtained judgments in garnishment, claim that said moneys should be applied to the payment of said judgments and writs of garnishment, because and on account of the effect of the service of said writs of garnishment hereinabove  set forth, and of such service and of the judgments in garnishment, where there has been a judgment, to appropriate said moneys to the payment of said judgments and writs of garnishment as against said Tallahassee Mercantile Company, and also as against said Evans as such trustee in bankruptcy, and as against the estate of said bankrupts, and that said Evans is not entitled to have such moneys or any part thereof paid to him.   That your

orator has endeavored to get the joint consent of said Evans, as such trustee in bankruptcy and of the said plaintiffs in garnishment and in judgment, where judgments in garnishment have been rendered, and that said moneys should be paid to said Evans as such trustee in bankruptcy and be held by him subject to the adjudication of the Bankrupt Court as to whether or not said assignee is entitled to said money as against said plaintiffs in garnishment and plaintiffs in judgment in garnishment or said plaintiffs in garnishment or in judgment have a lien and prior claim on said moneys such payment to be made without prejudice to any priority of claim of the respective claimants or to be paid into your Honor's court under proper proceedings with like effect and for the like purpose and for your Honor to adjudicate the priority of right as between said Evans as such trustee in bankruptcy of the estate of said bankrupts, and said plaintiffs in garnishment to said funds; and while some of the parties concerned have been willing that such moneys should be paid by your orator to said Evans as such trustee in bankruptcy, or into your Honor's court subject to the judgment of the bankrupt court or your Honor as to such priority of right as to such moneys, yet others of them have refused to consent thereto and your orator is consequently compelled for its protection to bring this its bill of complaint against the defendants for the purpose of having the protection of the decree of this Honorable Court in the premises. That your orator is not personally interested in said moneys nor otherwise interested than to the extent of making payment thereof to whomever of said defendants may be entitled to the same, and this your orator desires to do, but safely is not able to do without the advice and direction of this Honorable Court in a proceeding of the nature of this suit, complainant not being able to decide who is entitled thereto.

Your orator further says that it does not in any manner collude with either of said defendants upon the matter in question in this cause, and that it is not exhibiting this bill at the request of such defendants or any or either of them, and that it has not been indemnified by such defendants or by any or either of them, but that it files this bill of its own free will and solely to avoid being molested and injured touching the matters contained and set forth in said bill. To the end therefore that the said defendants may interplead and settle their rights as to the said sum of money and that your orator may be at liberty to pay the same into this court, which payment your orator has been and is now willing and ready and desires and now offers to do and that said defendants who have, as above stated, obtained judgments in garnishment against your orator may be enjoined and restrained from further proceedings against your orator upon said judgments, and those who have not obtained judgments may be restrained from further proceedings against your orator in their said garnishment proceedings, and that your orator upon payment into this court of said sum of money, and procuring the said defendants to interplead according to the course of this court, may be decreed to be discharged from all liability to said defendants and each and every of them in the premises, and may have its proper cost herein, and that your orator may have such other and further relief as may be proper in the premises."

Several of the defendants answered said bill admitting its allegations to be true, while others of said defendants answered said bill incorporating in their answers demurrers thereto. These demurrers came on to be heard before the chancellor who sustained the same and dismissed said bill as to the demurring defendants, from which said order the appeal is taken to this court. The

bill is one of interpleader seeking the direction of the court as to whom to pay certain moneys in the hands of the complainant belonging to the bankrupt estate of The Tallahassee Mercantile Company, and that complainant be protected in such payment by the orders and decree of the court. It appears from the bill that the complainant insurance company is due and owing to said Tallahasse Mercantile Company a certain sum of money found upon adjustment to be due upon a policy of fire insurance for loss and damage by fire to the insured property. That the various defendants sued said Tallahassee Mercantile Company, some of them in the Circut Court, and others of them in the County Judge's Court of Leon county for the recovery of their various claims against said Mercantile Company, and all of them at different dates had issued and served upon the complainant insurance company writs of garnishment ancillary to their respective suits against said Mercantile Company. Acknowledging its indebtedness to said Mercantile Company in response to these various writs of garnishment judgments therein were respectively entered against the garnishee insurance company. On the 27th of March, 1907, a petition in bankruptcy was filed in the District Court of the United States for the Northern District of Florida by certain of the creditors of said Tallahassee Mercantile Company praying that it be adjudged a bankrupt, and on May 2nd, 1907, the said Mercantile Company was by an order of said Federal Court adjudged a bankrupt, and on June 24th, 1907, by an order of said Federal Court, R. J. Evans was appointed and has qualified as Trustee of the estate of said bankrupt. It appears further from said bill that all of the judgments in favor of each and every of the defendant appellees against their principal debtor the bankrupt Tallahassee Mercantile

Company were rendered within four months of the filing in the Federal Court of said petition in bankruptcy.

Sub-division "F" of section 67 of the Act of Congress approved July 1st, 1898, entitled "An Act to Establish a Uniform System of Bankruptcy Throughout the United States," provides as follows: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate, and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

By the provisions of this section of the bankruptcy statute all of the judgments in favor of each and every of the defendants to the bill against their bankrupt debtor The Tallahassee Mercantile Company, if not absolutely annulled, were at least stripped of their effectiveness as enforceable prior liens upon the bankrupt's estate, and such judgment creditors are thereby deprived of the right to enforce or collect such judgments out of any part of the bankrupt's estate, be it lands, personalty or debts due from others to such bankrupt, in preference to the other creditors at large of such bankrupt who have not reduced their claims to judgment. Under our garnishment statutes the service of a writ of garnishment does not create a lien upon anything, but amounts to nothing more than a summons citing the garnishee to come in as

a party to the litigation between the suing creditor and his debtor and to answer and discover under oath in such cause in what sum he is indebted to such debtor, or what properties of such debtor were in his hands at the time of the service of such writ of garnishment or since.    The garnishment is at all times ancillary to the main suit between the creditor and his debtor, and the judgment, if any, against the garnishee is at all times dependent upon the judgment in the principal suit against the principal debtor.    If the suing creditor fails to recover judgment in his principal suit against his debtor, any judgment that he may have recovered against a garnishee in an ancillary proceeding in garnishment will likewise fall to the ground.    Anything, in other words, that disturbs the integrity of the judgment against the principal debtor will likewise and to like extent affect the judgment against the garnishee that is ancillary to such principal judgment. If no enforceable judgment exists against the principal debtor there can be likewise no enforceable judgment against a garnishee.    Chicago Herald Co. v. Bryan, 6 Am. & Eng. Anno. Cases 751 and notes; Mitchell v. Watson, 9 Fla. 160.    By the filing of the petition in bankruptcy and the subsequent adjudication in bankruptcy all of the defendant judgment creditors of the bankrupt Mercantile Company who recovered their judgments within four months of the filing of such petition in bankruptcy, became estopped from enforcing or collecting such judgments as prior claims or liens out of the estate of the bankrupt judgment debtor, and as debts due to such bankrupt by third parties who were garnisheed in such suits comprised part of the estate of such bankrupt, they were likewise estopped from enforcing or collecting such judgment out of the garnishee.

By the second section of the bankruptcy statute of Congress above referred to the bankruptcy courts of the

United States are given full jurisdiction to adjudicate and settle all of the questions presented by the bill in this case, and since the institution of such bankruptcy proceedings give rise to the principal question involved, as to whether the garnishment creditors of the bankrupt or the trustee of the bankrupt have the best right to the funds in the hands of the complainant insurance company belonging to such bankrupt, the Federal court in bankruptcy was the proper forum for the complainant's case, where all of the questions at issue could more fully and effectively be adjudicated and settled between the respective parties. The court below was, therefore, right in declining to take jurisdiction of the cause, and the order appealed from dismissing the complainants' bill should, therefore, be affirmed, but without prejudice to the right of the complainant to seek the same redress as is sought by the bill herein in the proper Federal tribunal as it may be advised.

HOCKER, J.—It seems to me that the appellants make out in their bill a clear and complete right to have the defendants in the bill interplead, and thus settle among themselves their respective rights to the moneys due to the Tallahasse Mercantile Company, the bankrupt and their debtor, from the Insurance Company. It may be that the complainant Insurance Company might have petitioned the Federal Court to have taken jurisdiction of this matter and that that court has the authority to settle all the questions which are presented in this record. In re McCartney, 109 Fed. Rep. 621; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. Rep. 557, 45 L. Ed. 814; 1 Remington on Bankruptcy, §§1696, 1697. But I see no reason why the State court should not have taken jurisdiction of the questions presented. 1 Ib. §1652 et sec.; Brandenburg on Bankruptcy (2nd ed.) p. 365.

Especially since in this case the trustee in bankruptcy has submitted himself to the jurisdiction of the court, and we have no decisions construing the existing garnishment statutes upon the questions presented here. It has never been heretofore decided by this court so far as I am informed that the service of a writ of garnishment under existing laws creates a lien on anything. There is no garnishment lien at common law except by the particular custom of London. Rood on Garnishment, §6. The lien must be created by statute or it does not exist. The statute does not in words make such a service a lien on any specific money, or thing. 2 Wade on Attachment, §325. In this respect the garnishment statute differs from the attachment statute. Section 2115 General Statutes of 1906. Section 2134 General Statutes of 1906 simply makes a garnishee *"answerable* for all indebtedness due by him to the defendant, and for any goods, moneys, chattels or effects of the defendant in his hands, possession or control at the time of the service of the writ or at any time between such service and the time of his answer." This section only creates a personal liability on the part of the garnishee in case of judgment against him. The proceeding is in effect a personal suit by the defendant against the garnishee. Rood on Garnishment, §3. There is nothing in the garnishment statute intimating that a judgment against the garnishee when rendered shall relate back to the time of service of the writ. The garnishment statute says nothing about the priorities of creditors who have sued out garnishment proceedings. Upon these questions the law in this State has not been settled by decisions, so far as I am informed, and upon them in other States there is not uniformity of opinion. 14 Am. & Eng. Ency. Law (2nd ed.) pp. 744 to 872 inclusive; Drake on Attachment (7th ed.) §453. Neither has it been settled by decision in this State whether gar-

nishment is a proceeding *in rem* or one *in personam*.    14 Am. & Eng. Ency. Law (2nd ed.)p, 742.  To illustrate the difference between our statute and those of some other States let us compare it with some of them.  Section 2957 Alabama Code of 1886, is as follows:  "The levy of an attachment or service of a garnishment creates a lien in favor of the plaintiff."   Section 2968 Id. is as follows:  "A garnishment may issue in and of a pending suit at any time before judgment, whether the summons has been executed or not; but if the suit be for the recovery of damages merely, or for a breach of contract, such garnishment must be issued only on the order of a judge of probate, or chancellor, or judge of the Circuit or City Court in which such suit is pending after the plaintiff has made the special affidavit of the facts and circumstances of the case required by section 2934 (3257) and such judge or chancellor has prescribed the penalty of the bond to be given by the plaintiff, and in all cases the plaintiff upon the issue of the garnishment must give bond with surety payable and with condition as in case of original attachments."   This statute thoroughly protects a defendant against damages from the consequences of improperly tieing up his property..  Ours does nothing of the kind.    See, also, Georgia Code of 1895, §§4705-6 *et seq.,* and Gregory v. Clark, 73 Ga. 542.

Whether the construction of the garnishment statutes is to be liberal or strict is also unsettled.    14 Am. & Eng. Ency. Law. (2nd ed.) 745-746; Rood on Garnishment, §§8, 9 and 10.  There are some reasons why our statute should be strictly construed.    So far as the defendant in a pending suit is concerned it is in some respects a harsh remedy unsupported by equitable principles.    It does not require as some statutes do (Id. p. 754, and 20 Cyc. 1059) that the plaintiff shall give a bond to indemnify the defendant or garnishee for any

damages caused by the issuance of the writ.    The plaintiff may tie up in the hands of the garnishee on any number of them for a period more or less indefinite, double the amount he may choose to claim.    He may be absolutely insolvent.    It may turn out on the trial that he has no valid claim against the defendant.    The defendant has lost the use of his money or property and is remediless. Such a thing is not a mere possibility under the statute, but in the knowledge of the writer has actually happened in his experience.    I therefore do not see why our garnishment statute in derogation of the common law should not be strictly construed, and why its meaning should be extended by construction or in supposed analogy to the attachment law beyond the meaning of its plain words.    It says nothing about garnishment being a lien, nor anything about when that lien shall attach, whether at the time of service of the writ, or at the time of entry of judgment against the garnishee.    Before the time of entry of judgment the liability of the garnishee is inchoate. After that time only is his liability fixed and determined and its amount definitely ascertained; and there is nothing in the statute which expressly makes that liability relate back as a lien upon anything to the time of service of the writ.

Neither do I think the bill shows any laches on the part of the complainant in filing the bill of interpleader. It alleges, in substance, that a few days after the garnishment judgments were entered the petition in bankruptcy was filed, that complainant was notified by the officer of the Federal court not to pay the money to the creditors, but that it must be paid to the trustee, and that complainant exerted itself to have the complicated and unsettled questions of law arising out of the condition in which it found itself determined and settled by a submission of them either to the Circuit Court of the State or to the

Bankruptcy Court; that some of the creditors were willing to do this, but that others of them refused so to do, making it necessary for its protection for the complainant to file the bill in this case. The demurrer admits these allegations.

Time consumed in reasonable efforts to bring about compromises or settlements of disputed rights are not regarded in equity as affording any ground for the application of the doctrine of laches. Such efforts have always been heretofore encouraged by the law. 18 Am. & Eng. Ency. Law (2nd ed.) 112.

It cannot reasonably be contended that the complainant was guilty of laches in not paying the garnishment judgments entered against it on the 23rd of March and thereby have anticipated and overcome the effect of the filing of the petition in bankruptcy on the 27th of March. In the first place four days' delay in paying a judgment is not, and never has been held to be negligent delay, and in the second, if it had done so, it would still be in the predicament of having the judgments it had paid declared void under the bankruptcy law, and of being liable to pay the amount it owed over again. It seems to me to be eminently reasonable that the complainant garnishee should not be placed in such a situation. It certainly cannot be the purpose of the law that a garnishee should be the victim of the uncertainties and difficulties which attach to its construction. I also think that under the circumstances the amendments proposed to the bill should have been allowed, in order that the justice and merits of the case might have been determined in the Circuit Court. I think the order appealed from should be reversed.

SHACKLEFORD, J.—Such a diversity of opinion prevails among the members of the court upon the points

presented by this appeal that all I shall attempt to do herein is to set forth my individual views.

On the 13th day of January, 1908, the appellant filed its bill in chancery in the Circuit Court for Leon county against R. J. Evans, Trustee in Bankruptcy of the estate of R. E. Hightower and Gilbert Hartsfield, partners lately doing business under the firm name and style of The Tallahassee Mercantile Company, and certain other named defendants, some of whom are alleged therein to be judgment creditors of The Tallahassee Mercantile Company, but there are no allegations as to what claim, right, title or interest, if any, certain other defendants have in the property described in the bill, and we are not informed by the bill why such persons were made parties defendant.

I shall not undertake to set out the allegations of the bill in full but only such portions thereof as are necessary to render this opinion intelligible as to the points decided. It is alleged that on the 23rd day of March, 1906, the appellant issued an insurance policy to R. E. Hightower, whereby his stock of merchandise was insured against loss or damage by fire to an amount not exceeding $750, for the period of one year, which policy was properly assigned to the Tallahassee Mercantile Company on the 29th day of October, 1906; that also on said last named date the appellant also issued an insurance policy to The Tallahassee Mercantile Company, whereby their stock of merchandise was insured against loss or damage by fire to an amount not exceeding $500, for the period of one year; that on the 7th day of November, 1906, such stock of merchandise was partially and materially damaged by fire, and that afterwards an adjustment of such loss was made, by which the appellant became liable to The Tallahassee Mercantile Company in the sum of $1,111.11 under the two policies. The bill also con-

tains allegations to the effect that certain other named insurance companies had also issued policies to The Tallahassee Mercantile Company for certain designated amounts, and that adjustments had been made by which such companies became liable to the insured for the payment of certain specified sums, but we are not concerned with these matters in this opinion. It is further alleged that certain of the defendants instituted actions at law against The Tallahassee Mercantile Company in the Circuit Court for Leon county and also caused writs of garnishment to be issued and served upon the appellant, which actions resulted in judgment being rendered therein against The Tallahassee Mercantile Company as well as against the appellant, the respective amounts and dates of the judgments against the latter being as follows: In the sum of $97.65 in favor of Kingan & Company, on the 22nd day of March, 1907, in the sum of $307.37 in favor of Wertheimer-Swarts Shoe Company, on the 23rd day of March, 1907, in the sum of $634.63 in favor of Levy Brothers, on the 22nd day of March, 1907, and in the sum of $58.01 in favor of Tallahassee Grocery Company, on the 22nd day of March, 1907. The bill also contains allegations as to the issuance and service of writs of garnishment upon certain other named insurance companies and the entry of judgments against such other garnishees for certain specified amounts. The bill contains further allegations to the effect that a petition in bankruptcy was filed in the U. S. District Court for the Northern District of Florida, on the 27th day of March, 1907, praying that R. E. Hightower and Gilbert Hartsfield, partners as above set forth, should be adjudged a bankrupt, and that on the 2nd day of May, 1907, an order was entered by such court adjudging The Tallahassee Mercantile Company a bankrupt and on the 24th day of June, 1907, R. J. Evans was appointed Trus-

tee of the estate of such bankrupt and had duly qualified as such; that the appellant had been notified by such Trustee that he claimed the sum of $1,111.11, which was due to such bankrupt from the appellant, as an asset of the bankrupt's estate, and demanded the payment of such amount to him, while, on the other hand, the judgment creditors named above claimed and demanded the payment of their respective judgments: that the appellant had endeavored to get the joint consent of such Trustee and of the plaintiffs in garnishment and in judgment, where judgments in garnishment have been rendered, to pay the amount of money due from the appellant to the bankrupt to such Trustee, to be held by him subject to the adjudication of the Bankrupt Court as to who was entitled to the same, but had failed to secure the consent of all of such parties.    There is a further allegation that "your orator is consequently compelled for its protection to bring this its bill of complaint against the defendants for the purpose of having the protection of the decree of this Honorable Court in the premises."    It is also alleged that the appellant "is not personally interested in said moneys nor otherwise interested than to the extent of making payment thereof to whomsoever of said defendants may be entitled to the same, and this your orator desires to do, but safely is not able to do without the advice and direction of this Honorable Court in a proceeding of the nature of this suit, complainant not being able to decide who is entitled thereto."    There is an additional allegation that the appellant has not colluded with any of the defendants in any manner but has filed the bill "of its own free will and solely to avoid being molested and injured touching the matters contained and set forth in said bill."

The prayers of the bill are as follows:    'To the end therefore, that the said defendants may interplead and'

settle their rights as to the said sum of money and that your orator may be at liberty to pay the same into this court, which payment your orator has been and is now willing and ready and desires and now offers to do, and that said defendants who have, as above stated, obtained judgments in garnishment against your orator may be enjoined and restrained from further proceedings against your orator upon said judgments, and those who have not obtained judgments may be restrained from further proceedings against your orator in their said garnishment proceedings, and that your orator upon payment into this court of said sum of money, and procuring the said defendants to interplead according to the course of this court may be decreed to be discharged from all liability to said defendants and each and every of them in the premises, and may have its proper costs herein, and that your orator may have such other and further relief as may be proper in the premises."

Some of the defendants filed answers to the bill, also incorporating demurrers therein, while the other defendants, with the exception of the C. B. VanDeman Company, a corporation, filed answers in which, either expressly or impliedly, they admitted the allegations of the bill. The C. B. VanDeman Company appears to have filed nothing. The demurrer incorporated in the answers question the equity of the bill.

On the 4th day of May, 1908, the appellant set down the demurrers for argument ,and on the 13th day of June, 1908, the appellant filed an application for leave to amend its bill as follows:

"That plaintiffs in garnishment have never caused to be issued writs of execution or other process for the enforcement of said judgments, and that within a few days after the entry of such judgments and on or about March 25th, or 26th, Geo. B. Perkins, attorney for the

British America Assurance Company, St. Paul Fire and Marine Insurance Company and Georgia Home Insurance Company, above named, was notified by John L. Neeley, a legally licensed and practicing attorney in the courts of Florida, and the Federal Courts of the United States for the Northern District of Florida, that he, in behalf of a number of creditors of said Tallahassee Mercantile Company, aforesaid, would at once by reason and on account of the entry of said garnishment judgments, file an application in the United States Bankruptcy Court in and for the Northern District of Florida, to have said Tallahassee Mercantile Company adjudged bankrupts, and that the complainant and the other Insurance Companies must not pay over said insurance money, as aforesaid, upon said garnishment judgments, because said insurance money would be claimed as assets of said bankrupt estate, and that said Perkins immediately thereafter being so notified by said Neeley informed and notified Geo. P. Raney, solicitor for complainant above named, of such warning from said Neeley.    That on March 27th, 1907, your complainant's solicitor George P. Raney received from Thomas F. McGourin, the United States Marshal in and for the Northern District of Florida, in Bankruptcy a telegram reading as follows:

'Pensacola, Fla. 3-27-1907.

Under special warrant in bankruptcy issued to me this day, by the U. S. District Court, I require to hold for me, or my order, any and all monies or credits due the Tallahassee Mercantile Company, or any of its members, regardless of judgments of garnishment.

Thos. F. McGourin, U. S. Marshal.'

That one or two days thereafter, to wit, March 29th, 1907, the United States Deputy Marshal, in said Bank-

ruptcy Court, served upon your complainant's solicitor, George P. Raney, an order issued in said bankruptcy cause, by said Bankruptcy Court, aforesaid, by reading the same to him, requiring your orator to hold all insurance money for said bankrupt estate, and not to pay the same upon said garnishment judgments entered as aforesaid.'

Insert between the word 'him' and the word 'that' in the 2nd line of page 9 the following: 'Such notification was first given by said Evans within a few days after his appointment as Trustee.'

Insert between the word 'orator' and the word 'is' in line 22 of page 9, the following words, to wit: 'has finally, after continued and repeated efforts to such end found itself compelled and."

On the 13th day of June, 1908, a decree was rendered by the court, which omitting the caption, is as follows:

"This cause came on to be heard upon the separate demurrers of the defendants Wertheimer-Swarts Shoe Company, Kingan and Company, A. M. Robinson Company, Cleveland Brothers, Cumberland Mills, Schatt & Morgan Cutlery Company and Parker Fain Grocery Company, to the bill of interpleader, and was argued by counsel and upon consideration thereof it was ordered, adjudged and decreed that the said separate demurrers of the said several defendants be sustained and allowed.

And it was further ordered, adjudged and decreed that the application of the plaintiff for leave to amend its bill in the particulars set out in said application and filed in this court of even date with this order be refused and denied, and that said bill be dismissed at plaintiff's costs as to said several defendants.

Ordered, adjudged and decreed at Chambers this 13th day of June, A. D. 1908."

From this decree the appellant has entered its appeal

to this court, assigning four errors, all of which question the correctness of the decree, which may, however, conveniently be treated together.

As we said in Knight, Norman & Co. v. J. C. Turner Cypress Lumber Co., 55 Fla. 690, text 697, 45 South. Rep. 1016, text 1018: "It is settled law in this court that in equity, as well as at law, a pleading is to be most strictly construed against the pleader thereof, and in passing upon a demurrer to a bill every presumption is against the bill. It is incumbent upon a complainant to allege in his bill every fact, clearly, and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein, as show that he is not entitled to relief in a court of equity, he must suffer thee consequences of his so doing." Also see authorities there cited, especially Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926, where a number of prior decisions of this court are collected. As we held in Hancock v. Hancock, 55 Fla. 680, 45 South. Rep. 1020, S. C. 15 L. R. A. (N. S.) 670, "the facts and circumstances upon which a complainant bases his claim and right to the relief which he seeks are matters peculiarly within his own knowledge, and he will be presumed to have stated them as strongly and as favorably to himself as he could, exercising his privilege of selecting his own language in which to couch them." I would also refer to King v. Hooten, 56 Fla. 805, 47 South. Rep. 394, text 398, and City of Miami v. Miami Realty, Loan & Guaranty Co., decided here at the present term. As we also held in Durham v. Edwards, *supra,* "a court of equity cannot grant relief when the complainant's own showing in his bill demonstrates a want of equity in his prayer." Also see Godwin v. Phifer, 51 Fla. 441, text 453, 41 South. Rep. 597, text 601.

This court seems never to have had occasion to pass

upon and determine the essentials of a bill of interpleader or the practice to be followed therein, except incidently in Sammis v. L'Engle, 19 Fla. 800, which, however, will prove of but little service in the instant case. Neither have we any statute or rule of court dealing with the subject or regulating the practice, as some jurisdictions have, so we must look elsewhere for guidance. The appellant has cited us to Fletcher's Equity Pleading and Practice, Chapter XLI of which is entitled "Bills of Interpleader," wherein the subject is fully and clearly discussed and which we have carefully examined. I have also referred to 23 Cyc, pages 1 to 36, 1 Pomeroy's Equitable Remedies, Chapter 2, and 11 Ency. of Pl. & Pr., pages 444 to 481, all of which I have found of material assistance in my investigation. It is not my purpose to go into a discussion of the matter any further than is necessary for a proper determination of the points presented to us.

As was said by Chancellor Walworth in Bedell v. Hoffman, 2 Paige (N. Y.) 199, text 201, "the filing of bills of interpleader ought not to be encouraged; and they should never be brought except in cases where the complainant can in no other way protect himself from an unjust litigation. in which he has no interest." See to the same effect Metcalf v. Harby, 1 Ves. Sen. 248; Green v. Mumford, 4 R. I. 313; Haseltine v. Brickey, 16 Gratt. (Va.) 116, text 124. As to the definition of interpleader, we cannot do better than to quote the following language from Lord Cottenham's opinion in Hoggart v. Cutts, 1 Craig & P. 204: "The definition of interpleader is not and cannot now be disputed. It is where the plaintiff says, 'I have a fund in my possession in which I claim no personal interest, and to which you, the defendants, set up conflicting claims; pay me my costs, and I will bring the fund into court, and you shall contest it between your-

selves.'" As is said in 11 Ency. of Pl. & Pr. 447, note
1, "this quotation has been *cited with approval* in Cogs-
well v. Armstrong, 77 Ill. 139; Wakeman v. Kingsland,
46 N. J. Eq. 113, 18 Atl. Rep. 680; Anderson v. Wilkin-
son, 10 Smed. & M. (Miss.) 601; Green v. Mumford, 4
R. I. 313; Horton v. Baptist Church, etc., 34 Vt. 309. Also
see 1 Words & Phrases, 788 to 790. Also see an instruc-
tive note by Judge Freeman to the case of Shaw v. Coster
in 35 Amer. Dec., pages 695 to 712, wherein the entire
subject of interpleader in equity is ably discussed and
many authorities are collated. Among other essential
requirements of a good bill of interpleader are the fol-
lowing: "1. Two or more persons must have preferred
a claim against the plaintiff. 2. They must claim the
same thing, whether it be a debt or a duty. 3. The
plaintiff must have no beneficial interest in the
thing claimed. 4. It must appear that he cannot
determine, without hazard to himself, to which of
the defendants the thing, of right, belongs. There
must also be an offer to bring the money or
thing in dispute into court." Dorn v. Fox, 61 N. Y.
264, text 268. As was said by Chief Justice Brickell
in Conley v. Alabama Gold Life Ins. Co., 67 Ala. 472,
text 474: "It is not every case in which a party may be
liable to double vexation, or in which, by different or
separate interests, two or more persons claim of him the
same debt or duty, that a court of equity will come to his
assistance, and compel the claimants to interplead. The
party must show that he stands not only indifferent be-
tween the claimants, that he is without interest in the
controversy to be waged between them, but it must also
appear that he is in the relation of a mere stakeholder,
or depository, and that by no act on his part the em-
barrassment of conflicting claims and the peril of double
vexation has been caused. When he stands to either of

the parties in the relation of a wrong-doer, or it appears that by his own act or conduct double damages have been caused, he is not innocent, he is not without interest, and the court will not intervene to relieve him from the embarrassment in which he has voluntarily involved himself." Also see Shaw v. Coster, 8 Paige 339, S. C. 35 Amer. Dec. 690, especially the monographic note thereto, to which we have already referred; Crashay v. Thornton, 2 Myln. & Cr. 1; Cochrane v. O'Brien, 2 Jones & L. 380; Desborough v. Harris, 5 DeGex., M. & G. 439; National Life Ins. Co. v. Pingrey, 141 Mass. 411, 6 N. E. Rep. 93; Wakeman v. Kingsland, 46 N. J. Eq. 113, 18 Atl. Rep. 680; Connecticut Mut. Life Ins. Co. v. Tucker, 23 R. I. 1, 49 Atl. Rep. 26.

As is further said by Judge Freeman, in his note on page 703 of 35 Amer. Dec., "It is undoubtedly the general rule that to entitle a party to relief by a bill of interpleader he must apply before verdict or judgment at law, in favor of either of the claimants," though he adds that such rule is not universal. See the authorities there cited, from which as well as from many others which we have examined we select the following as being especially applicable to the instant case; Cornish v. Tanner, 1 Younge & J. 333; Holmes v. Clark, 46 Vt. 22; Danaher v. Prentiss, 22 Wis. 311; Yarborough v. Thompson, 3 Smed. & M. (Miss.) 291, S. C. 41 Amer. Dec. 626; Home Life Ins. Co. of New York v. Caulk, 86 Md. 385, 38 Atl. Rep. 901; Haseltine v. Brickey, 16 Gratt. (Va.) 116; Mitchell v. N. W. Mfg. & Car Co., 26 Ill. App. 295; Tralles v. Metropolitan Club, 18 App. Cas. D. C. 588; Wabash R. Co. v. Flannigan, 95 Mo. App. 477, 75 S. W. Rep. 691. The following language used in Mitchell v. N. W. Mfg. & Car. Co., *supra,* in which a garnishee filed a bill of interpleader is in point: "The bill shows that complainant had incurred liability to the Nel-

son Manufacturing Company, by answering the process admitting indebtedness to Groover, and suffering judgment. According to the rule applicable, he cannot maintain a bill of interpleader, even though he may have so incurred liability under a mistake. He does not stand indifferent between the parties, since one of them has a valid legal demand against him at all events." As was also said in Home Life Ins. Co. of New York v. Caulk, *supra*, text 389, "After judgments have been obtained by one or more of the defendants against the plaintiff it is impossible for him to occupy a position of strict neutrality between the parties, as he is then interested either in setting aside the judgments, as this bill asks to have done, or in having the claims established in favor of the holders of the judgments so as to protect him against the other parties." As was also said in Holmes v. Clark, *supra*, text, "In a bill of interpleader the right of either defendant to the fund should not have been determined in a suit at law." In line with this principle, it has been held that a stakeholder seeking the aid or intervention of a court of equity by a bill of interpleader should not be guilty of laches, but should act promptly, using all reasonable diligence to bring the contending claimants into court. 23 Cyc. 10, and 11 Ency. of Pl. & Pr. 462, and authorities cited in notes. In U. S. Land & Invest. Co. v. Bussey, 4 Silver. (N. Y.) 512, it as held that "an application for an order of interpleader, where a party delays making his motion from January to June without reasonable excuse, will be denied." Also see Larabrie v. Brown, 1 DeGex. & Jones, 204. In other words, the maxim, *Vigilantibus, non dormientibus, jura subveniunt*, applies.

As we have already seen three of the judgments against the appellant as garnishee were rendered on the 22nd day of March and the other on the 23rd day of such

month, in the year 1907, the petition in bankruptcy against the Tallahassee Mercantile Company was filed on the 27th day of such month, an order adjudging such company to be a bankrupt was entered on the 2nd day of May, 1907, and on the 24th day of June, 1907, R. J. Evans was appointed Trustee of the estate of such bankrupt, while the bill of interpleader was not filed until the 13th day of January, 1908. No reason is given for this long delay. The judgments so rendered against the appellant as garnishee were binding and conclusive. It is not alleged in the bill when the appellant was notified by the trustee in bankruptcy that he laid claim to the amount due from it to the insured on the two insurance policies, but it could not have been until after his appointment on the 24th day of June, 1907. Why were not the judgments paid prior to that date? The petition in bankruptcy was not even filed until the 27th day of March, several days after the entry of the judgments. The appellant did not have to await the issuance of executions, but had the privilege of paying the judgments at any time after their entry. Upon this showing as made in the bill, can it be said that the appellant "is in the relation of a mere innocent stakeholder, or depository, and that by no act on his part the embarrassment of conflicting claims and the peril of double vexation has been caused?" Conley v. Alabama Gold Life Ins. Co., 67 Ala. 472, text 474, to which we have already referred. It would seem that a negative answer would have to be given to this question.

Since the appellant by the amendment which it proposed to its bill, leave to file which was denied and upon which error is assigned, seeks to show that a few days after the judgments in question were rendered he was notified by the Marshal of the U. S. District Court for the Northern District of Florida that under a special

warrant in bankruptcy he required the appellant to hold for him all money due The Tallahassee Mercantile Company, regardless of judgments of garnishment, it may be advisable to see what effect, if any, the proposed amendment could have had and whether or not any error was committed in refusing it. The appellant relies upon and cites Section 67 of the U. S. Bankruptcy Act of 1898, to justify it in filing its bill of interpleader. Sub-division f of such section, which is the one relied on, is as follows: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy. judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

No extended discussion of the effect of the quoted portion of such section is called for. That would come more properly from the Federal Courts. Suffice it to say that it seems to be well settled that "judgments. whose liens are rendered null and void under Section 67

(f) as operating to create such liens, are nevertheless themselves allowable, it being the judgment lien, and not the judgment itself that is affected." 1 Remington on Bankruptcy, §777. Also see In Re Richard, 94 Fed. Rep. 633; Pepperdine v. Bank of Seymour, 100 Mo. App 387, 75 S. W. Rep. 890, which is an instructive and well reasoned case, collating authorities. Although there is some conflict in the decisions upon the question, which, perhaps, is largely owing to the difference in the statutes of the different States and the language used in construing them, the better reasoned cases seem to hold that not even the lien is avoided or impaired by the quoted section of the Bankruptcy act, provided that the same was acquired in good faith, without fraud or collusion of any kind, more than four months prior to the filing of the petition in bankruptcy, especially where the local statutes provide in effect that the judgment when obtained shall relate back and take effect as of the date when such lien was acquired, though the judgment was recovered and entered within four months preceding the filing of the petition. See the reasoning in Pepperdine v. Bank of Seymour, supra, In re Blair, 108 Fed. Rep 529; In re Beaver Coal Co., 110 Fed. Rep. 630, which was affirmed by the United States Circuit Court of Appeals for the Ninth Circuit in 113 Fed. Rep. 889; Stickney and Babcock Coal Co. v. Goodwin, 95 Me. 246, 49 Atl. Rep. 1039, S. C. 85 Amer. St. Rep. 408. It is true that in these cited cases the courts were dealing with the question whether or not a lien acquired by the levy of an attachment upon property of the bankrupt more than four months prior to the filing of the petition in bankruptcy should be held to be impaired or divested by the section of the Bankruptcy Act in question, but the analogy existing between the levy of a writ of attachment and the service of a writ of garnishment is so close that

it seems to me that the reasoning used in the cited cases is likewise applicable to garnishment liens, at least in this State.    Compare Sections 2115 and 2134 of the General Statutes of 1906, the former relating to liens created by the levy of a writ of attachment and the latter to the effect of the service of a writ of garnishment.    For the sake of convenience, I copy the latter statute, which is as follows:

"2134.  (1670.)    Effect of service of writ.    The service of the writ shall make the garnishee answerable for all indebtedness due by him to the defendant, and for any goods, money, chattels or effects of the defendant in his hands, possession or control, at the time of the service of the writ or at any time between such service and the time of his answer."

I realize that upon the question as to whether or not the service of a writ of garnishment creates a lien upon the property in the hands of the garnishee the authorities are in irreconcilable conflict.    There is also much force in the contention that section nine of chapter forty-three, of the laws of 1845 was omitted by the Revisors both from the Revised Statutes of 1892 and the General Statutes of 1906, which evinced an intention upon the part of the lawmaking body not to create a lien upon the property in the hands of the garnishee or to have the same bound from the time of the service of the writ.    Such omitted section was as follows:

"Sec. 9.  Be it further enacted, That all property in the hands of such garnishee or garnishees, belonging to any such defendant or defendants, at the time of serving any such process of garnishment, shall be bound by such process."

This section will also be found as section ten on page 550 of McClellan's Digest.    I shall not attempt to set forth or discuss the many authorities which I have ex-

amined upon this point.    Much may be said on either side, and it may be that, numerically speaking, the weight of authority is to the effect that in the absence of a statute expressly so providing, no such lien is created.    The statutes in the different jurisdictions are so variant that, unless they are kept in mind in reading the opinions, an erroneous impression is likely to be made thereby.    Be all this as it may, in order to give any binding force or effect to our present statute, which I have copied above, I am of the opinion that a lien must be held to be created upon property in the hands of the garnishee from the time of the service of the writ.

In Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 South. Rep. 897, we followed the prior decision in McClellan v. Solomon, 23 Fla. 437, 2 South. Rep. 825, S. C. 11 Amer. St. Rep. 381, holding that the lien of a judgment rendered in an action at law dates, as to property previously attached in such action, from the time of the levy of the writ of attachment.    Applying the same reasoning, it would seem to necessarily follow that by the service of the writ of garnishment a lien upon the property of the defendant in the hands of the garnishee is thereby acquired, and, when the same is matured by the entry of a judgment against the garnishee, such judgment relates back and dates from the time of the service of such writ.    "No subsequent transfer of such property, or subsequent arrangement or cancellation of the indebtedness between the garnishee and defendant can destroy the lien or affect the rights of the plaintiff."    20 Cyc. 1058.    Also see authorities cited in note 33, and 14 A. & E. Ency. of Law (2nd ed.) 744, 867, and authorities there cited.    As was held in Bethel v. Judge of Superior Court, 57 Mich. 379, 24 N. W. Rep. 112, "Garnishment process is in the nature of an equitable attachment of assets belonging to a defendant

held by a third person, the purpose of the attachment being to apply such assets in discharge of defendant's debt." Also see North Star Boot & Shoe Co.v Ladd, 32 Minn. 381, text 383, 20 N. W. Rep. 334; Mahon v. Fancett,      N. Dak.      , 115 N. W. Rep. 79. The reasoning of this court in First National Bank of Pensacola v. Hirschkowitz, 46 Fla. 588, 35 South. Rep. 22, concerning equitable attachments is also applicable here. As was said by Mr. Justice Peckham in Thompson v. Fairbanks, 196 U. S. 516, text 526, 25 Sup. Ct. Rep. 306, "Under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act." As was said by Chief Justice Fuller in Hiscock v. Varick Bank of New York, 206 U. S. 28, text 41, "the bankruptcy act did not attempt by any of its provisions to deprive a lienor of any remedy which the law of the State vested him with." Also see Security Warehousing Co., v. Hand, 206 U. S. 415, text 425; In re New York Economical Printing Co., 110 Fed. Rep. 514, text 518, which was approved in Hewit v. Berlin Machine Works, 194 U. S. 296, text 302, 24 Sup. Ct. Rep. 690; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. Rep. 567; York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. Rep. 481; In re Franklin, 151 Fed. Rep. 642, text 647. The case of Davis v. Crompton, 158 Fed. Rep. 735, decided by the U. S. Circuit Court of Appeals for the Third Circuit, the opinion being rendered by Gray, Circuit Judge, will be found to be a well reasoned case, containing a valuable collection and review of the authorities. I would also refer to W. S. Danby

Millinery Co. v Dogan,      Tex. Civ. App.      , 105 S.
W. Rep. 337, though I do not wish to be understood as
concurring in all that is said therein.   It is neither neces-
sary nor advisable that I should do so, as the facts and
circumstances involved therein are quite variant from
those in the instant case as well as some of the points to
be determined, but it will be found to be an instructive
case, and I think the reasoning therein is sound.

The bill in the instant case alleges "that of the
above writs of garnishment were in the form prescribed
by the statute of the State of Florida in such case made
and provided."   The bill further alleges that such writs
of garnishment, in which judgments were subsequently
entered, as set forth above, were all served upon it prior
to the 21st day of November, 1906, giving the date of the
service of each writ.   Now, as our statute, which we
have copied above, in effect provides that "the service
of the writ" upon the garnishee binds all property of the
defendant in the hands of such garnishee at the time
of such service, or which may come into his hands at
any time between such service and the time of his an-
swer, it would seem that the liens upon the funds in the
hands of the garnishee were created by the service of
such writs, and, as service of all such writs was perfect-
ed upon such garnishee more than four months prior to
the filing of the petition in bankruptcy against the bank-
rupt, I do not see how, under the cited authorities, such
liens could "be deemed null and void" or affected in any
way by the quoted section of the Bankruptcy Act.   See,
also, Bloch Bros. v. Moore.      Ala.    , 39 South. Rep.
1025, and authorities there cited.   As we have already
seen, the judgments related back and became effective as
of the date of service of such writs of garnishment.   In
other words, the liens in question were obtained by the
service of such writs, and the office to be performed by

the judgments was not to create other or additional liens but simply to permit and provide for the enforcement of liens already acquired by the service of such writs of garnishment. We have further seen that such judgments were in no wise impaired or destroyed. As to the effect of a judgment against a garnishee, see Sessions v Stevens, 1 Fla. 233, S. C. 46 Amer. Dec. 339, to which is appended an instructive note, which case was cited and approved in Gilchrist, Judge, v. Meacham, 3 Fla. 219, text 230, to the effect that "there can be no judicial inspection behind the judgment save by appellate power." As was said by Chief Justice Marshall in Ex parte Watkins, 3 Peters 193, text 202: "A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. It puts an end to inquiry concerning the facts by deciding it." This language was quoted with approval by this court in Sessions v. Stevens, *supra,* text 240.

If the foregoing principles be sound, the bill is fatally defective. As was held in the leading case of Shaw v. Coster, 8 Paige 339, S. C. 35 Amer. Dec. 690, to which we have had occasion to refer: "The complainant in an interpleading bill must show that he is ignorant of the rights of the respective parties, who are called upon by him to interplead and settle their rights between themselves, or at least, that there is some doubt, in point of fact, to which claimant the debt or duty belongs. And therefore, if he states a case in his bill which shows that one defendant is entitled to the debt or duty, and that the other is not, both defendants may demur." As was also said in Smith v. Grand Lodge A. O. U. W., 124 Mo. App. 181, 101 S. W. Rep. 662, text 668: "It has been

said, and it is no doubt generally true, as a pertinent proposition in interpleader proceedings, that the bill must not show a clear right of title in one of the claimants as against the other, for, in such case, where the right of one claimant is clear—that is not in the least doubtful as against the other, it would be the duty of the stakeholder to discharge the obligation by payment or delivery to the claimant about whose right there could be no doubt." Also see Briant v. Reed, 14 N. J. Eq. 271. I am of the opinion that it clearly and affirmatively appears from the allegations of the bill that the judgment creditors who are designated therein and made defendants are entitled to be paid by the appellant the amounts of their respective judgments against it as garnishee and that the defendant trustee of the bankrupt's estate has no right thereto.

I fail to see wherein the proposed amendment to the bill would have materially strengthened the case of the appellant. Certainly no abuse of judicial discretion is made to appear to us in its refusal, so we would not be warranted in holding it error.

I have given this case my most careful consideration and have examined all of the authorities cited to us by the respective counsel, as well as numerous others. Looked at from every viewpoint, I have been unable to find any error in the decree from which the appeal was entered, but am clear that the bill was well open to attach by demurrer, therefore am of the opinion that such decree should be affirmed.